STATE Ex. Rel. Cook, Plaintiff, v. POLLEY, Secretary of State, Respondent.

(139 N. W. 118.)

1. **Statutes—Time of Taking Effect—Emergency Clause—Initiative and Referendum—Surplusage.**

   An emergency clause, as part of a law enacted by popular vote pursuant to an initiative petition, is mere surplusage.

2. **Statutes—Construction—Ascertaining Intent—Object of Statute—Mischief and Remedy.**

   The fundamental rule in the construction of statutes is, that the court should give effect to the intention of those who enacted the law. To do this, the object sought to be accomplished by the law should be borne in mind, and, to ascertain this object, the occasion and necessity of its enactment, the defects or evils in the former law, and the remedy provided by the new law should be considered; the statute should then be given that construction best calculated to advance its object by suppressing its mischief and securing the benefits intended.

3. **Same—Construction—Intent—Letter and Intention.**

   A thing within the intention of the enactors of a statute is as much within the statute as if it were within the letter;

and a thing within the letter is not within the statute, unless within the intention of the enactors.

4.   Officers—Appointment—Primary Law—Party Indorsement—Filing Petition—Statute—"May"—"Richards Primary Bill."

Richards Primary Bill (Laws 1911, ch. 201,) Sec. 112, provides that any party elector wishing to become a candidate for an appointive government position, may file his written application for the official party indorsement with the secretary of state after any primary election date, and before the following general election date.   Sec. 113 requires the secretary of state to keep a record of such applications, entering the same as received, and prepare and mail lists thereof, within ten days, and to prepare, print, and mail separate party lists thereof, within ten days after the general election, to each member of the party state central committee.   Sec. 114 requires the party state central committee, including national committeeman, to meet on second Tuesday of December after general election, to determine who shall receive the official party indorsement as the recommendation of the party for appointive positions, and to certify such indorsement to the appointing officer, and to the secretary of state, and (as to federal positions) to the representatives of the state. in the federal congress.   **Held,** that the provisions of Sec. 112 that any candidate may file his application before the general election date is mandatory, and a party committee cannot give the official party indorsement to a candidate filing his application after the general election, or who files no application, since the provisions of the law are not for the sole benefit of candidates, but to promote and protect the public welfare; and "may" means "must" when, as in the case at bar, third parties or the public have an interest in having the act done that is authorized by the permissive language.

Haney, J., dissenting.   Corson, J., dissenting as to the decision upon this point, and concurring specially, in the result.

(Opinion filed December 28, 1912.)

Original mandamus proceeding by the State, on the relation of Alfred N. Cook, against Samuel C. Polley, Secretary of State. Writ denied.

*Thomas H. Null,* and *Gaffy, Stephens & Fuller,* for Plaintiff.

The following authorities were submitted on behalf of plaintiff: Carter v. Thorson, 5 S. D., 478; Van Dusen, et al., v. State, 11 S. D., 321-322; Co.-Op. S. & L. Ass'n. v. Fawick, 11 S. D., 593; State v. Morgan, 2 S. D., 42; Morrow v. Wipf, 11 N. W., 1125; Davenport v. Elrod, 20 S. D., 577-578; State, ex rel Grea-

ves v. Henry, 5 L. R. A., N. S. 340, note; U. S. v. Henderson, 78 U. S. 652-659, 20 Law Ed. 237; Newburg v. Miller, 9 Am. Dec. 280; State v. Hoolan, 98 Pac. 964; Druggist Act, 155 Ind. 414; County Seat, 34 Ill. 293; Yorty v. Paine, 62 Wis., 154; Carlton v. People, 10 Mich., 250; In re Boyle, 9 Wis., 240; Keeling v. Pittsburg, 54 Atl., 485; Bank v. McKinney, 2 S. D., 106.

Royal C. Johnson, Attorney General, for Respondent.

No memorandum of authorities was filed on behalf of Respondent.

WHITING, J. The people of this state presented to the Legislature of 1911 an initiative petition, seeking the enactment into law of a most comprehensive measure which, from the name of its reputed author, was and is known as the "Richards Primary Bill." This bill was first introduced on February 1, 1911; it being sought at that time to have the Legislature enact it into a law, and with an emergency clause, so that it might go into full force and effect upon its passage by the Legislature and approval by the Governor. The bill as so introduced was finally defeated upon March 2, 1911. Upon February 25, 1911, another bill was introduced into the Legislature, which sought the submission of this measure to the electors of the state for their adoption or rejection. This bill carried, and the measure was submitted to the vote of the electors. At the general election held on November 5, 1912, this measure was enacted into law by the votes of the electors, and it went into full force and effect upon the canvass of said votes, December 5, 1912. Sections 112-114 of said law (Laws 1911, c. 201) read as follows:

"112. Official Party Indorsement—To Appointive Officers. Any party elector who wishes to become a candidate for an appointive government position, state or federal, except postmaster, which is otherwise provided for in this act, may file his written application for the official party indorsement for the office for which he is a candidate, stating therein his party affiliation with the secretary of state after any primary election date, and before the following general election date.

"113. Duty of Secretary of State—Party Indorsement Record. It shall be the duty of the secretary of state for the purpose

of preserving a record of applications for appointive government positions referred to in section 112 of this act to prepare and keep in his office a suitable record book of official party indorsements in which all said applications for official party indorsement shall be entered as received and from which they shall prepare and cause to be printed within ten days after the general election date, a separate list of such applicants of each party, giving the name, address and position for which each candidate has applied, and mail one copy of the same to each member of the party state central committee, including its chairman and secretary.

"114.   Official Party Indorsement—How Determined.   The party state central committee, interested, including its chairman and secretary and national committeeman, shall meet in the senate chamber at the state capitol at ten o'clock a. m. on the second Tuesday of December after the general election, and the members present shall constitute a quorum, and shall, at all times, act in public session and without subcommittees, as a committee of the whole, hearing applicants and receiving written recommendations from party electors, and shall proceed by ballot and majority vote to determine who shall receive the official party indorsement as the recommendation of the party for any state and federal appointive government position.   The chairman and secretary of said committee shall certify to such indorsement in writing and forward the same immediately for consideration to the person having the appointive power in state positions and to each of the United States Senators and Congressmen in federal positions as the official party recommendation, and shall send a copy of the same to the secretary of state, who shall enter the same in the record book of official party indorsements.   *   *   *  "

"Any official party indorsement desired by any party elector as a recommendation to fill vacancies occurring during the interim of biennial meetings of the party state central committee shall be given by a majority of the party state chairman and national committeeman and the chairman of the applicant's county, and a copy of their indorsement shall be likewise filed with the secretary of state."

At the primary election held in June, 1912, and under the law then in force, certain persons were chosen as the members of the Republican state central committee of this state.   Some of

these persons met at the time and place mentioned in section 114, supra and assuming to act as the state central committee of the Republican party, passed a resolution by which they attempted to give to one Alfred N. Cook the "official party indorsement" provided for by the above sections in support of his candidacy for appointment to the office of food and drug commissioner, a position to be filled by the incoming Republican state administration, and to that end they passed a resolution of indorsement. The said Cook had, at a date not earlier than November 15, 1912, filed in the office of the secretary of state a written application seeking such "official party indorsement." Two of the persons taking part in such meeting, and who acted, respectively, as chairman and secretary thereof, assuming to act as such chairman and secretary, executed and delivered to said Cook a certificate certifying to the said resolution and its passage. The said certificate was then precented to the secretary of state for filing. Said officer refused to file such certificate, and the said Cook, as relator, seeks from this court a writ of mandamus requiring the respondent, as secretary of state, to receive and file said certificate.

The respondent, answering the petition of relator, demurs thereto, and also denies that there was in existence, subsequent to December 5, 1912, any Republican state central committee. It is the contention of respondent that, upon the going into effect of the said "Richards Primary Bill," all existing party state central committees were legislated out of existence, and that, inasmuch as no committee had been chosen under the provisions of the new law, there was no such committee in existence. Under the view we take of the case, we find is unnecessary to, and believe it would serve no useful purpose for us to, in any manner intimate our views upon this question.

It is the contention of relator that the provisions of sections 112 and 113, supra, are merely directory, and that an applicant for "official party indorsement" may file his application at any time prior to the second Tuesday of December; and it is even contended by such relator that the party committee may consider and indorse candidates for appointment who have never filed any applications under Section 112, supra. Respondent contends that the provisions of sections 112 and 113 are mandatory; that they provide the only method through which there can be presented to a party

committee the name of an applicant seeking its indorsement; and that such committee has no jurisdiction to give an "official party indorsement" to any person whose name is not thus presented. These contentions raise a question that will be just as vital and important in after years as it is to-day. Therefore upon the answer to this question we deem it best to base this decision.

[1]    It is probable that the electors of this state, in presenting their initiative petition, hoped that the Legislature might enact the proposed measure into law, thus rendering it unnecessary to submit it to a vote of the people. This is indicated from the fact that, as petitioned for, and even as voted for by the electorate, it had an emergency clause, which clause is mere surplusage when forming a part of a law enacted by popular vote. State ex rel. Gray v. Olsen et al. (S. D.) 137 N. W. 561. This is also indicated from the fact that the chronological order for the doing of the various acts to be performed under the proposed law is such that, if it had been enacted into law by the Legislature of 1911, with the emergency clause as a part thereof, every provision of said law would have worked out in regular and natural order, one result of which would have been the giving of full opportunity for the filing of applications for "official party indorsements" prior to the first general election held after such law went into effect. If the law had been so enacted, and such an opportunity for filing applications had been given, probably the contention now urged by relator would never have occurred to the mind of any person. But when such law was enacted by the vote of the people, and thus went into effect in the interim after the general election and prior to the date for the meeting provided for by section 114, thereof, making it impossible for the provisions of sections 112 and 113 to be complied with prior to the year 1914, there seems to have arisen a desire to treat such sections as merely directory, even if by so doing the apparent intent of the voters is disregarded and the ultimate purpose of these sections destroyed.

[2-3]    Certain rules that should govern in the construction of statutes have become so fully established as a part of our law, by the decisions of every court, as to really need no citation of authorities in their support. The first and fundamental rule is that the court should ascertain and give effect to the intention of those who enacted the law. To do this the court should bear in mind

the object sought to be accomplished by the law; and to ascertain this object it should consider the occasion and necessity of its enactment, the defects or evils in the former law, and the remedy provided by the new one. The statutes should then be given that construction which is best calculated to advance its object by suppressing the mischief and securing the benefits intended. 36 Cyc. 1106 and 1110. It should always be remembered that a thing which is within the intention of the enactors of a statute is as much within the statute as if it were within the letter thereof; and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the enactors thereof. Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819; Wilson v. Donaldson, 117 Ind. 356, 20 N. E. 250, 3 L. R. A. 266, 10 Am. St. Rep. 48; Mayor, etc., v. Root, 8 Md. 95, 63 Am. Dec. 692.

[4] Previous to the enactment of the law now before us, while we had had much legislation regulating the exercise of the elective franchise, as well as the nomination and election of candidates for elective offices, there was upon our statute books no law designed to regulate and control the candidacy of one seeking an appointive office, nor any to regulate and control the indorsement of such candidacy by the duly authorized representatives of a political party. It was a matter of general belief that appointments were often dictated by a few persons constituting a so-called "party-machine"; that appointments were often controlled by the necessities of political exigencies; that they were often made as a reward for political services performed, and with little or no regard for the qualifications of the person so rewarded for the position given him; and, finally, that they were the result of secret, and even corrupt, promises made pending the campaign. It followed that many of the electors believed that such conditions and practices were fraught with serious dangers to the body politic. There can be no question in the mind of any person conversant with these facts but that it was with the hope of establishing, under the sanction of law a procedure that might, in part at least, put an end to these dangers that the sections of this act which we have quoted above were enacted into law. In order to insure the result, while the electors did not seek to take from the Governor or other appointing power his right to the final decision of who should be

his appointee, they did seek to throw around the "official party indorsement" such a guaranty of publicity and fairness as would make of such an indorsement a most earnest demand to such appointing power from the electors of his party acting through their duly authorized representatives, demanding that their wishes be obeyed. That the candidacy of one for an oppointive position might be public, and his contest therefore fair and open, it is required that every applicant who sought such "official party indorsement" should file a written application therefor, making of it a public record; it is required that he shall file such application after all elective officers are nominated, but before their election, thus assuring every elector of the state, regardless of his party offiliation, that he may have an opportunity to know, when he comes to cast his vote at the general election, not only who are seeking election, but who are going to seek appointments from the respective parties; it is required that the secretary of state give prompt notice to the official representatives of the successful party, ading them of the name of each applicant of that party, his name, and the office sought, thus assuring actual notice to the local representative of every member of the successful party, and giving such representative ample time to investigate the fitness of the several applicants, as well as giving to every interestd elector a chance to advise with the committeemen; it is required, under section 114, that the committee at its meeting shall hear the "applicants" (certainly referring to the "applicants" mentioned in sections 112 and 113), and shall receive "written recommendations from party electors"—something that could not be intelligently given by an elector if it is impossible for him to know the name of every person who may be considered by such committee. If applications can be filed after the time fixed by statute, or if one who has filed no application can be considered by the committee as an applicant and his candidacy indorsed, the whole purpose of these sections is thwarted, and every provision thereof that might, in itself, tend to prevent the evils sought to be remedied would be nullified.

The relator takes the view that the provisions of sections 112 and 113 were enacted for the benefit of the applicant, and that therefore those things which he may do thereunder are permissive rather than mandatory. If his premise were correct, his conclusion would also be correct; but the provisions of these sections

were no more enacted for the benefit of the applicant, as such, than were the provisions of the Australian ballot system, or those of our primary election laws, either past or present, enacted for the benefit of candidates. The first and only purpose of all such legislation is to promote and protect the public welfare—the carrying out of the provisions thereof is but a means to this end—and the truth of this fact should be the controlling force in determining whether this legislation is directory or mandatory.

Relator lays great stress upon the use of the word "may" in section 112, wherein it is provided that a candidate "may file his written application. * * * " In Dwarris on Construction of Statutes, p. 220, is announced, in a note by Judge Potter, the well established rule that *"may,* in a statute, *means* must whenever third parties or the public have an interest in having the act done which is authorized by such permissive language." Bansemer v. Mace, 18 Ind. 27, 81 Am. Dec. 344. "Where a statute directs the doing of a thing for the sake of justice or the public good, the word 'may' is the same as the word 'shall.' " . Steines et al. v. Franklin County, 48 Mo. 167, 8 Am. Rep. 87; Rex. v. Barlow, 2 Salk. 609; Johnson v. Pole, 95 N. C. 68; Territory v. Nelson, 2 Wyo. 346; notes on page 162 of 6 L. R. A.; Bouvier's Law Dictionary.

In closing we would state that, following the rule above announced, viz.: "A thing which is within the intention of the enactors of a statute is as much within the statute as if it were within the letter thereof; and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the enactors thereof"—it is clear to us that, just as, under our old primary election law, a path was marked out which the candidate must follow, if he desired to be the "party" candidate for an elective office, and as, under such law, no elector could vote for any one as a "party" candidate for an office, unless such candidate had followed the path so marked out, so the present law has marked out the path which any one who seeks from his party committee an "official party indorsement" of his candidacy for an appointive office must follow, in order that he may be considered by such committee as a candidate;' and unless the road so marked out has been followed this law does not clothe such committee with any power or jurisdiction whatever to give to him an "official party

indorsement." It follows that the paper presented to the respondent for filing was not an "official party indorsement," and was not entitled to filing.

The writ prayed for is denied.

HANEY, J. (dissenting). To hold that the authority of the state committee is limited to persons who have filed applications with the secretary of state requires, it seems to me, that "may," in section 112, he changed to "must"; that the words "hearing applicants," in section 114, be so changed as to read, "hearing applicants who have complied with the provisions of section 112 of this act"; and that the clause "and shall proceed by ballot and majority vote to determine who shall receive the official party indorsement" be changed as to read, "and shall proceed by ballot and majority vote to determine who, among such applicants, shall receive the official indorsement." Without the interpolations indicated, or others of similar import, there is no warrant for interpreting "may" as "must" in the preceding section. On the other hand, the use of the word "may," presumably used advisedly, indicates that the filing of a written application with the secretary of state was not intended to be a condition precedent to the consideration of any person's qualifications for an appointive office. The power and duty of making indorsements having been expressly lodged with the state committee, without any express provisions limiting the exercise of such power to applications filed with the secretary of state, I do not think the power should be so limited by a forced construction of the statute, or by the interpolation of the words required to sustain the conclusion reached by the majority of this court. In absence of language clearly indicative of such a purpose, I could not conclude that any lawmaking body would intentionally declare that all indorsements and appointments shall be restricted to persons who seek public office. However, the question to be decided is not what the will of the sovereign power ought to be, but what it is, as expressed in the statute under consideration.

In my opinion, the application for the writ of mandamus should be granted.

CORSON, J. (concurring specially.) I concur in the majority opinion denying the writ of mandamus in this proceeding, on the ground that the party committee now in existence has not been

elected by the enrolled electors, as provided by the primary act now in force, and that the committee provided for in the act will not be in existence, empowered to make party indorsements, until the March primary election in 1914. But I do not concur in the majority opinion that the committee, when properly elected, is limited in its indorsements to applicants who may have filed their applications with the secretary of state, as provided in section 112 of the act, as I am of the opinion that the committee, when properly constituted, may receive applications and make party indorsements of applicants other than those who may have filed their applications as provided in the section above referred to, for the reasons stated by Mr. Justice HANEY in his dissenting opinion.