## MORAN TOWING & TRANSP. CO. v. CITY OF NEW YORK.

District Court, S. D. New York. October 1, 1929.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan and Edmund F. Lamb, both of New York City, of counsel), for libelant.

Arthur J. Hilly, Corp. Counsel, of New York City (William A. Walling and William J. Leonard, both of New York City, of counsel), for respondent.

WOOLSEY, District Judge. My decision in this case is for the libelant on each of the twelve causes of action contained in the libel for the full amount claimed in each, with in-

418

terest thereon from the dates of the termination of each charter and towage service. There will be one bill of costs granted to the libelant.

These several causes of action arise out of the following situation:

In the New York City 1926 budget there was an appropriation called "Code 2820 General Plant Service." On December 18, 1925, a resolution was adopted by the board of estimate and apportionment in the following terms:

"Resolved, That the Board of Estimate and Apportionment, pursuant to the terms and conditions of the 1926 Budget, hereby approves of form of contract (No 1869), specifications and estimate of cost in the sum of twenty-three thousand four hundred and twenty-five dollars ($23,425.) for towing and scow hire (Class 1 to 3, inclusive), for the period between January 1, 1926, and June 30, 1926, under the jurisdiction of the Department of Docks, the cost thereof to be charged to the 1926 Budget appropriation "Code 2820, General Plant Service;" provided, however, that if no bids are received for said work within the estimate of cost herein approved, the amount of such estimate of cost may be reconsidered by the Board of Estimate and Apportionment, or its duly authorized representative."

Pursuant to this resolution, the commissioner of docks advertised in the City Record for ten days consecutively, commencing January 21, 1926, for bids to be submitted before noon on February 1, 1926, for "Contract No. 1869—For Towing and Scow hire for the period Jan. 1, 1926, to June 30, 1926."

Under this advertisement, of which all the details need not be set forth, the bids were divided into three classes according to the services required.

After the bids had been received, those for class 1 and 2 were accepted and contracts made with the successful bidder under contract No. 1869. The successful bidder for class 2 was the libelant in this case. The lowest bid for class 3 was made by one Dodge, and was rejected by the commissioner of docks, in accordance with the right reserved in the advertisement, on the ground that it was too high.

The commissioner of docks did not advertise again, but thereafter, whenever, during the first six months of 1926, he needed a scow or tug for the service which would have been covered by class 3, issued to the libelant, through his deputy commissioner, slips which were called "Open Market Orders" of the Department of Docks. These slips all referred to No. "2820," the number of the 1926 budget appropriation for general plant service.

The scows thus ordered were furnished by the libelant from time to time, and were under demise charter to the city for short periods of time but not continuously.

The scows were used to receive dredgings that were brought up by a dock department dredge, the Grabit; and the tugs thus ordered performed the service required of them from time to time in taking these scows to sea for dumping.

So far as this case is concerned, the dredge Grabit was used principally to dredge out slips opposite various dumps of the Street Cleaning Department in order that the Street Cleaning Department scows would have enough water to come into the slips to receive the refuse dumped.

During January and February, 1926, the city paid bills for the scows and tugs furnished by the libelant under three "Open Market Orders" similar to those here in evidence, and ceased to pay the libelant's bills only after March 1, 1926. The practice of using "Open Market Orders" for dock department needs of this kind apparently was not new. It appears from the evidence that it was used in the year 1925.

Section 419 of the Greater New York Charter (Laws N. Y. 1901, c. 466, as amended by Laws 1922, c. 661) deals with the method of making contracts with the city of New York "for work to be done or supplies to be furnished" to the city.

In the forest of words which constitute that section, there is to be found the requirement that, subject to certain exceptions not relevant here, contracts for work or supplies involving an expenditure of more than $1,000 must be founded on sealed bids or proposals made on published advertisements therefor.

There is, however, at the end of section 419, the following provision dealing with cases of work or supplies involving an obligation on the city of less than $1,000 and not requiring advertisement and bids:

"No expenditure for work or supplies involving an amount for which no contract is required shall be made, except the necessity therefor be certified to by the appropriate borough president or the head of the appropriate department, and the expenditure has been duly authorized and appropriated."

█ Under the implied power given to him by this part of section 419, the Commissioner of Docks issued his "Open Market Orders" to the libelant. In doing so I find that he was acting within his authority as the head of the Department of Docks, and also in pursuance

of the duty laid on him by section 818 of the Charter (as amended by Laws N. Y. 1918, c. 515, § 1) to clean, dredge, and deepen slips.

Counsel for the city admitted that the commissioner of docks had, by these "Open Market Orders," made a series of contracts each involving an expenditure of less than $1,000, and that the work was done as claimed. He objects to a recovery here, however, on the ground that the splitting of the class 3 work into a series of contracts, each for less than $1,000 was an unauthorized act by the Commissioner of Docks and contrary to section 419, that the several alleged contracts thus made therefore did not bind the city, and that consequently the city cannot be held for them even in a court of admiralty.

■■ I do not agree with his contentions. I find that the scows which were hired from time to time under the "Open Market Orders" were chartered by the city, as has often been held by the Circuit Court of Appeals for this circuit under demise charters by which the city became the bailee of the scows. The Willie (C. C. A.) 231 F. 865; Hastorf v. Long, etc., Co. (C. C. A.) 239 F. 852; Dailey v. Carroll (C. C. A.) 248 F. 464. Cf. also United States v. Shea, 152 U. S. 178, 14 S. Ct. 519, 38 L. Ed. 403. Under such a charter the libelant's claims for the hire of the scows do not come within the category of "work to be done or supplies to be furnished," referred to in section 419. Cf. Davies v. Mayor, etc., of City of New York, 83 N. Y. 207, 214.

■ But, even if the hire claims could be considered as within the scope of section 419, as the claims for tug services may be, I hold that the city must fail on its plea of ultra vires. For I think the case is controlled by the principles laid down in the cases of Swift v. Mayor, etc., of City of New York, 83 N. Y. 529; People v. Kane, Commissioner of Sewers, 43 App. Div. 472, 61 N. Y. S. 195, 632, affirmed 161 N. Y. 380, 385, 387, 55 N. E. 946.

This case is, however, perhaps stronger against the city on the facts than those cases, for I find that the commissioner of docks here made twelve separate and distinct contracts, each involving an obligation of less than $1,000 on the city, and that, by the terms of the contracts, the obligation could not have been increased beyond that sum by the lapse of time as it might have been in the cases just cited.

The rule of Walton v. City of New York, 26 App. Div. 76, 49 N. Y. S. 615, if it can be sustained in principle in view of the decisions of the Court of Appeals above referred to, does not apply to the situation found here;

nor is this a case like Sheridan v. City of New York, 145 F. 835, 837, in which Judge Adams of this district held that there could not be a recovery against the city because the alleged contract before him was not made by a department head.

■ The instant case, it seems to me, put at its highest for the city, involves merely a question of departmental method with which, having a series of maritime contracts before it, this court, as a court of admiralty, is not concerned. Rodgers & Hagerty v. City of New York (C. C. A.) 285 F. 362.

If the parties are unable for any reason to agree on the dates from which interest should run, I will give the libelant an interlocutory decree referring the case to a commissioner to deal with this element of the recovery.