FONDER et al., Respondents v. CITY OF SOUTH SIOUX FALLS et al., Appellants

(71 N.W.2d 618)

(File No. 9494. Opinion filed August 10, 1955)

**Milton Buechler,** Lennox, for Plaintiffs and Respondents.
**J. B. Shultz,** Sioux Falls, for Defendants and Appellants.

SMITH, J.   The city of South Sioux Falls has appealed from a judgment in favor of the plaintiff taxpayers which prevents the city from paying one Earl H. Fodness for gravel placed on its streets.

In March 1952 Mr. Fodness agreed with the street commissioner of the city to deliver gravel to any part of South Sioux Falls for $1.10 per yard.   Thereafter as an immediate need for gravel at some particular location arose, its purchase was authorized by the city commission at a regular meeting, but no record of such action was made in the minutes of the meeting.   Thereupon the street commissioner would place an order with Mr. Fodness.   An occasional order was placed without such an authorization. A total of seventy-four orders was placed with Fodness between March 26 and December 9, 1952, none of which involved an expenditure of as much as $500.   With one ex-

ception each order described the quantity of gravel needed and used at a particular separate street location. The orders aggregated $8,076.30. The gravel was not billed as it was delivered. Slips representing particular purchases or orders were attached to nineteen different statements. These statements were filed with the auditor at irregular intervals. In May 1953 the city paid Fodness $500 and thereafter continued to make like monthly payments until it was restrained by the trial court. As each $500 payment was made, a voucher was approved at a regular meeting, and a record of such approval was made in the minutes of the meeting. A balance of $2,076.30 has not been paid to Mr. Fodness.

The trial court found that no resolution was ever adopted by the city commission authorizing the purchase of the gravel delivered by Mr. Fodness, and that it was purchased in the manner above described to avoid a showing of an expenditure of over $500.

On the theory that the city was without power to obligate itself to Mr. Fodness without competitive bids and a formal resolution authorizing the contract of purchase, the trial court enjoined further payments to him.

The contention of the city is that because we are dealing with seventy-four separate transactions, none of which involves an expenditure equal to or in excess of $500, the provisions of SDC Supp. 65.07 for competitive bids are without application.

According to the definitions contained in SDC Supp. 65.07 the words "public corporation", as used therein, include cities. By SDC Supp. 65.0701-2 it is provided: "All contracts of any public corporation, whether for the construction of public improvements or contracts for the purchase of materials, supplies or equipment, when such contracts, except contracts of counties, involve an expenditure equal to or in excess of five hundred dollars * * * must be let to the lowest responsible bidder. * * *" Other provisions of the chapter deal with the procedure to be followed in advertising for bids, etc. By SDC Supp. 65.0704-1 it is provided: "It shall be unlawful for any public corporation or its officers to enter into any contract in violation of the

terms of this act, and any such contract entered into shall be null and void and of no force and effect. * * *"

The contention of the city raises this question, viz., Is a city having a recognized constant need for a considerable supply of gravel for use in the maintenance and repair of its streets, involving an expenditure of much more than $500, prevented by this statute from purchasing gravel without competitive bids in response to its needs for immediate application at distinct locations, under separate orders or contracts, each of which involves an expenditure of less than $500?

Read in a literal sense the statute purports only to require competitive bids when in fact a particular contract for the purchase of materials, supplies or equipment involves an expenditure equal to or in excess of $500. However, familiar principles require us to look beyond the words of a statute in an effort to understand the meaning of the legislature.

In State ex rel. Cook v. Polley, 30 S. D. 528, 533, 139 N.W. 118, 120, it was written, "The first and fundamental rule is that the court should ascertain and give effect to the intention of those who enacted the law. To do this the court should bear in mind the object sought to be accomplished by the law; and to ascertain this object it should consider the occasion and necessity of its enactment, the defects or evils in the former law, and the remedy provided by the new one. The statutes should then be given that construction which is best calculated to advance its object by suppressing the mischief and securing the benefits intended. 36 Cyc. 1106 and 1110. It should always be remembered that a thing which is within the intention of the enactors of a statute is as much within the statute as if it were within the letter thereof; and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the enactors thereof. * * *"

The object the legislature sought to accomplish through the requirement of competitive bidding in making contracts for public corporations is to guard against favoritism, improvidence, extravagance, fraud and corruption.

McQuillan, Municipal Corporations, 3d Ed., § 29.29; 63 C.J.S., Municipal Corporations, § 995.

In 43 Am.Jur., Public Works and Contracts, § 26, it is written: "Since they are based upon public economy and are of great importance to the taxpayers, laws requiring competitive bidding as a condition precedent to the letting of public contracts ought not to be frittered away by exceptions, but, on the contrary, should receive a construction always which will fully, fairly, and reasonably effectuate and advance their true intent and purpose, and which will avoid the likelihood of their being circumvented, evaded, or defeated."

(2) The intention to regulate the purchase of all materials, supplies and equipment by public corporations is made manifest by the express terms of this statute. For obvious reasons small contracts were excepted from its provisions. However, by introducing this exception dealing with small contracts, it is inconceivable that the lawmakers intended to provide a lawful means by which its prime objective to require that the major needs of the public for materials, supplies or equipment be met through competitive lettings could be circumvented by multiple small open-market purchases. For that reason we are firmly persuaded that given a present need for gravel costing several thousand dollars for immediate application to its streets in the maintenance and repair thereof, a city would violate the provisions of this statute if it sought to meet that need, without competitive bids, through multiple contemporaneous orders or contracts, each involving less than $500. McQuillan, Municipal Corporations, 3d Ed., § 29.33 By parity of reasoning we are also convinced that given a recognized current need for such a supply of gravel for application over a period of weeks or months, a city would violate this statute, if, without competitive bidding, it attempted to meet that apparent need through multiple noncontemporaneous contracts. To arrive at a different conclusion, we would be compelled to ignore the object and spirit of this legislation.

The evidence reveals that in the spring, summer and fall of 1952, the city of South Sioux Falls had a current

need for such a considerable supply of gravel to be applied to its streets in the forthcoming months. A price was made by Mr. Fodness for supplying gravel throughout the city based on a haul to its exact center as representing a fair average haul. Without any extraordinary development over $8,000 in gravel was actually used on the streets from March to December of that year. No fact appears in the record which offers support for an inference that either the officers of the city or even Mr. Fodness failed to recognize the nature and approximate extent of the city's constant need for gravel. In these circumstances, it is our view and holding that the governing body of the city and its officers were without power to purchase that gravel except through competitive bids as provided by SDC Supp. 65.07.

In support of its views the city has cited Swanton v. Corby, 38 Cal.App.2d 227, 100 P.2d 1077; Anderson v. City of New York, 258 App.Div. 588, 17 N.Y.S.2d 326, and Moran Towing & Transportation Co. v. City of New York, D. C., 36 F.2d 417. These cases have received careful consideration. We find nothing contained therein which, in our opinion, warrants a holding in defiance of the legislative intention we deem so plainly revealed by SDC Supp. 65.07.

The requirement for competitive bids contained in the cited statute constitutes a jurisdictional prerequisite to the exercise of the power of a public corporation to enter into a contract. SDC Supp. 65.0704-1; Seim v. Independent School Dist. of Monroe, 70 S.D. 315, 17 N.W.2d 342, Rousch v. Town of Esmond, 73 S.D. 406, 43 N.W.2d 547; Los Angeles Dredging Co. v. City of Long Beach, 210 Cal. 348, 291 P. 839, 71 A.L.R. 161; Tobin v. Town Council of Town of City of Sundance, 45 Wyo. 219, 17 P.2d 666, 84 A.L.R. 902; 43 Am.Jur., Public Works and Contracts, § 25, p. 766.

Because the described transactions were proscribed by the quoted statute and were thus placed beyond the powers of the city, the trial court did not err in restraining and further payments to Mr. Fodness. 43 Am.Jur., Public Works and Contracts, § 222, p. 970; 64 C.J.S., Municipal Corporations, § 2150b., p. 973.

The judgment of the trial court is affirmed.

ROBERTS, SICKEL, and RENTTO, JJ., concur.

RUDOLPH, P. J., dissents.

RUDOLPH, P. J. (dissenting). As stated in the majority opinion, a literal reading of the statute fails to disclose a violation under the facts here presented. The vice apparently is that the city failed to anticipate its needs, or anticipating its needs failed to get a bid on an amount of gravel in excess of $500.

The trial court did not find bad faith. In its Finding No. 8 it simply found that the city purchased the gravel as it did "for the purpose of coming within the rule set down in Section 45.1501 of S.D.C. of 1939 as amended." Nor is there any intimation in the record that gravel could have been purchased any cheaper. There has been no loss to the plaintiffs as taxpayers.

In view of the literal compliance with the statute, and the fact that the record discloses no bad faith, I believe it was error to grant equitable relief by way of injunction. Clark v. Beadle County, 42 S.D. 146, 173 N.W. 743.