**CORNER CONSTRUCTION CORP., Plaintiff,**

v.

**RAPID CITY SCHOOL DISTRICT NO. 51–4, Defendant.**

**Civ. No. 93–5105.**

United States District Court, D. South Dakota, W.D.

March 2, 1994.

Ronald W. Banks, Banks, Johnson & Colbath, Rapid City, SD, for plaintiff.

Wynn A. Gunderson, Gunderson, Palmer, Goodsell & Nelson, Rapid City, SD, for defendant.

## MEMORANDUM OPINION AND ORDER

BATTEY, District Judge.

### PROCEDURAL HISTORY

Plaintiff Corner Construction Corp. (plaintiff) brings this action under 42 U.S.C.

§ 1983. Plaintiff alleges a violation of its procedural due process rights to be awarded a construction contract as the low bidder.

Defendant Rapid City School District No. 51-4 (defendant) filed a motion for summary judgment arguing that it is entitled to summary judgment on the claims alleged. Plaintiff responded in opposition and filed a cross motion for partial summary judgment on the issue of defendant's liability. Both motions are now before the Court. Summary judgment is granted to defendant.

### FACTS

On or before March 31, 1993, defendant called for bidding on renovation contracts for South Middle School, Dakota Middle School, and West Middle School.[1] On April 21, 1993, defendant opened the sealed bids received and plaintiff was the low bidder on the West and Dakota renovation contracts with Seco Construction Company (Seco) being the second low bidder on these two contracts.[2] The renovation contracts were to be performed during the summer of 1993 while school was not in session.

Prior to the opening of bidding on the middle school renovation contracts, defendant had awarded a contract to Corner Construction Company, Incorporated (CCCI) for the construction of the City/School Administration Building. CCCI is the plaintiff's corporate predecessor. Numerous disputes between defendant and CCCI have arisen over construction-related problems with the City/School Administration Building. Plaintiff does admit that there exist at least some construction-related problems in connection with the City/School Administration Building. However, plaintiff argues that the majority of problems with that building are design related and that the construction-related problems are attributable to work performed by CCCI's subcontractors. Defendant and

---

1. Defendant's statement of facts alleges that bids were opened in April *1992*. However, exhibit A to Defendant's brief in support of its motion for summary judgment indicates that the bid opening was advertised in the Rapid City Journal on March 31, 1993, and April 7, 1993. Therefore, the Court concludes that defendant opened bids in April *1993*.

2. Seco was the low bidder on the renovation contract for South Middle School. Plaintiff does not challenge defendant's awarding the South renovation contract to Seco.

CCCI are currently participating in arbitration to resolve these disputes related to the City/School Administration Building.

Robert F. Corner is the president and sole shareholder of plaintiff. Although he had no ownership interest in CCCI, he was a vice-president of CCCI and was employed by CCCI as an engineer and estimator.

On April 29, 1993, members of defendant met to discuss the bids submitted on the renovation contract. Because of defendant's dissatisfaction with the work performed by CCCI on the City/School Administration Building, defendant determined that plaintiff was not a "responsible bidder" and voted to award all three renovation contracts to Seco.

On April 30, 1993, defendant informed plaintiff by phone of defendant's proposed bid decision on the renovation contracts. Defendant also informed plaintiff at this same time of the reasons for defendant's decision. On May 4, 1993, defendant awarded the contract to Seco. On May 6, 1993, defendant sent plaintiff's attorney a letter explaining the matters that had been discussed in the April 30 phone call.

Plaintiff did not attempt, either before or after defendant awarded the renovation contracts to Seco, to rebut defendant's decision that it was not a responsible bidder. On July 16, 1993, plaintiff filed suit against defendant in South Dakota state court alleging that defendant had deprived plaintiff of constitutionally protected property and liberty interests without due process of law. Defendant subsequently removed the action to this Court.

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 1983. A corporation is considered a "person" under both the due process clause of the fifth amendment to the United States Constitution and under 42 U.S.C. § 1983. *See South Macomb Disposal Auth. v. Township of Washington,* 790 F.2d 500, 503 (6th Cir.1986); *California Diversified Promotions, Inc. v. Musick,* 505 F.2d 278, 283 (9th Cir.1974); *Safeguard Mut. Ins. Co. v. Miller,* 472 F.2d 732, 733 (3d Cir.1973); and *Mini Cinema 16 Inc. v. Habhab,* 326 F.Supp. 1162, 1165 (N.D.Iowa 1970).

## DISCUSSION

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458, 488 (1962). In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.

In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Recently, the Supreme Court noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts," *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356, and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.*

■ The trilogy of *Celotex, Anderson,* and *Matsushita* provide the Court with a methodology in analyzing the parties' motion. Under this trilogy, it is incumbent upon each party, based upon the showing set forth by the other party, to establish significant probative evidence to prevent summary judgment. *See Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank,* 934 F.2d 976, 979 (8th Cir.1991).

## B. Whether Plaintiff is Entitled to Summary Judgment Because Defendant Did Not Submit Affidavits

Plaintiff raises the argument that defendant has not submitted any sworn affidavits in support of its motion, and thus is not entitled to summary judgment. This argument is without merit.

■ Rule 56 of the Federal Rules of Civil Procedure does not require the moving party to submit affidavits in support of a motion for summary judgment, although the moving party has the option to do so. *See* Fed. R.Civ.P. 56(b) (stating that "[a] party against whom a claim ... is asserted or a declaratory judgment is sought may, at any time, move *with or without supporting affidavits* for a summary judgment in the party's favor") (emphasis added). In this case, defendant has submitted exhibits which document the general sequence of facts in this case and the reasons for defendant's decision. Plaintiff *does not dispute in any material way any* of the facts alleged by defendant. Rather, the disagreement between plaintiff and defendant is over the *legal effect* of the facts on which the parties agree. In this context, defendant was *not* required to submit affidavits to demonstrate the facts in support of its motion.

## C. Plaintiff's Motion to Strike

Plaintiff has submitted a motion to strike the last reply filed by defendant on the summary judgment motions. Plaintiff argues that defendant is not entitled to make the last filing and that such filing is superfluous. The Court notes that, under local rules, defendant had a right to file a reply on its own motion as well as a separate response in opposition to plaintiff's cross motion for par-

tial summary judgment. *See* D.S.D. LR 7.2(A). Accordingly, the Court denies plaintiff's motion to strike.

## D. Plaintiff's Due Process Claims

Plaintiff alleges in its complaint that defendant's refusal to award plaintiff the renovation contracts deprived plaintiff of both a property interest and a liberty interest in violation of plaintiff's procedural due process rights. Although plaintiff has not specified whether its claim arises under either the South Dakota Constitution or the United States Constitution or both, both constitutions contain due process clauses and the Court will treat plaintiff's claim as though pleaded under both constitutions. *See* U.S. Const. amend. XIV, § 1 (prohibiting states from depriving its citizens of life, liberty, or property without due process of law); S.D. Const. art. VI, § 2.

■ The procedural aspect of the due process clause requires that a state provide notice and an opportunity for a hearing before the deprivation occurs. To prove a violation of procedural due process rights, plaintiff must first prove that it was deprived of a constitutionally protected property or liberty interest. *Littlefield v. City of Afton,* 785 F.2d 596, 600 (8th Cir.1986). Only after proof of deprivation of a property or liberty interest does the Court reach the question of whether the process afforded was adequate.

## 1. Whether Plaintiff Has a Constitutionally Protected Property Interest in the Renovation Contracts

■ The Constitution does not define "property" for purposes of the due process clause of the fourteenth amendment. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972). Plaintiff must show that some independent source of law, such as South Dakota state law, gives plaintiff "a legitimate claim of entitlement to" the renovation contracts. *Id.* at 577, 92 S.Ct. at 2709. The Court concludes that plaintiff is unable to show such an entitlement under South Dakota law and, therefore, plaintiff's due

process claim based on deprivation of a property interest must fail.

Under South Dakota law, an award of a contract by a local governmental body such as defendant must be submitted to a competitive bidding process if the amount of the contract exceeds $5,000. *See* SDCL 5–18–2, 5–18–3, 13–20–3. Under the competitive bidding law, a governmental body is granted the discretion to reject any and all bids submitted to it and is otherwise directed to award the bid to the "lowest responsible bidder." SDCL 5–18–2, 13–20–7.1.[3] No South Dakota statutes give any guidance as to how a governmental body is to determine who is a "responsible" bidder. However, two South Dakota cases do provide the Court with some guidance in interpreting the South Dakota statute.

In the case of *In re McCain*, 9 S.D. 57, 57, 68 N.W. 163, 164 (1896), the Pennington County Commission had received bids for county printing and supplies for one year. The Commission awarded the contracts to Perkins Brothers Co. *Id.* Joseph B. Gossage sought and received in the trial court a writ of mandamus ordering the Commission to accept his bid and award him the contracts because he alleged that he was the lowest responsible bidder. *Id.* McCain, a member of the Commission, refused to obey the writ of mandamus. *Id.* The trial court placed McCain in jail for contempt of court and McCain filed a petition with the South Dakota Supreme Court seeking a writ of habeas corpus. *Id.*

The supreme court formulated the sole issue before it as whether the trial court had jurisdiction in the first instance to issue the writ of mandamus. *Id.* If the lower court had been without jurisdiction in issuing the mandamus, then McCain could not be held in contempt for refusing to obey it. *Id.* The resolution of this issue rested in turn on a determination of whether the act of awarding the contracts was discretionary or ministerial. *Id.* In concluding that the act of awarding the contracts was discretionary and, therefore, that the trial court had been without jurisdiction to issue the writ of mandamus, the supreme court stated:

> [T]he duties of officers intrusted with the letting of contracts to the lowest responsible bidder are not duties of a merely ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond the control of the courts *by mandamus.* It was not the duty of the board to accept the Gossage bid. Its duty consisted in carefully and honestly considering the terms of each bid, the needs of the county, the responsibility of each bidder; and upon the facts, *as its members believed them to exist,* the board was bound to act. The duty of determining what bids were the lowest, all things considered, and who was or was not a responsible bidder, belonged to the board. It was a duty confided to its honest judgment and sound discretion. This discretion did not rest with the circuit court. It should have been slow to interfere with its exercise by the officers especially intrusted therewith. We very confidently reach the conclusion that the decision of the board, *within the limits of the discretion conferred upon it,* should not be controlled by the courts.

*Id.* (emphasis supplied) (citation omitted). The supreme court concluded that the trial court had been without jurisdiction to issue the writ of mandamus and, therefore, without power to imprison McCain for contempt for refusing to obey the writ. *Id.* The court granted McCain the writ of habeas corpus he requested. *Id.*

---

**3.** Defendant argues that the authority granted in SDCL 5–18–2, 13–20–7.1 whereby governmental bodies may reject "any and all" bids allows defendant to reject plaintiff's bid even if it was the lowest bid from a responsible bidder. However, this position is inconsistent with other South Dakota statutes and opinions of the attorney general which state that a governmental entity must either reject *all* bids received or award the contract to the lowest responsible bidder whose bid conforms to the contract specifications. *See* SDCL 5–18–9 (stating that, "[u]nless all bids presented are rejected, the lowest responsible bid, *in all cases,* must be accepted" as long as the bid conforms to contract specifications and the bid is not withdrawn); and S.D. Att'y Gen.Op. 91–10 (stating that if a governmental entity decides to award the contract, it must do so to the lowest responsible bidder).

■ *McCain* establishes that courts cannot *direct, in the first instance,* a governmental body's exercise of discretion in awarding contracts. However, the opinion leaves open the question of whether a court may review a decision of a governmental body—once the contract is awarded—to determine if the decision was "within the limits of the discretion conferred upon it." *Id.*

A second South Dakota case sheds some light on this question. In *Tri–State Milling Co. v. Board of County Commissioners for Pennington County,* 75 S.D. 466, 467, 68 N.W.2d 104, 104 (1955), the Pennington County Commission had solicited bids for a herbicide and, although Tri–State had submitted the low bid, the Commission awarded the contract to Warne, the second low bidder. Tri–State appealed the Commission's decision to the trial court. *Id.* The issue before the South Dakota Supreme Court was whether the trial court had jurisdiction to entertain the appeal. *Id.*

A South Dakota statute provided that South Dakota trial courts had jurisdiction to entertain appeals of a county commission decision by "any person aggrieved" by such decision. *Id.* The supreme court held that the trial court had not had jurisdiction of the appeal because Tri–State was not an aggrieved person within the meaning of the statute. *Id.* In reaching this conclusion, the court stated that "[t]he requirement that contracts shall be let to the lowest responsible bidder is intended for the protection of the public rather than that of the bidders. *No legally enforceable right vested in [Tri–State] merely because it was ostensibly the lowest bidder." Id.* at 468, 68 N.W.2d at 105 (emphasis supplied).

*McCain* and *Tri–State Milling Co.,* taken together, direct the conclusion that plaintiff had no protected property interest in the renovation contracts by virtue of the fact that plaintiff was the low bidder. South Dakota's interpretation of its competitive bidding statute is not without precedent in other jurisdictions. *See Colorado Paving Co. v. Murphy,* 78 F. 28, 30–32 (8th Cir.), *appeal dismissed,* 166 U.S. 719, 17 S.Ct. 997, 41 L.Ed. 1188 (1897) (interpreting a similar Colorado statute to give rise to no vested interest in the low bidder because the statute was enacted for the benefit of Denver city property holders and taxpayers).

SDCL 5–18–2 vests no interest in parties bidding on local governmental contracts. The statute was enacted for the benefit of the taxpaying public, "to guard against favoritism, improvidence, extravagance, fraud and corruption." *See Fonder v. City of South Sioux Falls,* 76 S.D. 31, 33, 71 N.W.2d 618, 620 (1955); *Tri–State Milling Co.,* 75 S.D. 468, 68 N.W.2d at 105. *Cf. Schull Construction Co. v. Bd. of Regents of Education,* 79 S.D. 487, 113 N.W.2d 663, 666 (1962) (holding that statutes setting forth the procedures and requirements for concluding contracts with governmental bodies were enacted for the purpose of protecting the public, not the parties who submitted bids on the contracts). In the event that a local governmental body awarded a contract in violation of SDCL 5–18–2, local taxpayers—for whose benefit the statute was enacted—would be entitled to bring suit to force compliance with the statute. *See Fonder,* 76 S.D. at 32–36, 71 N.W.2d at 619–21 (granting taxpayers in Sioux Falls an injunction to prevent the city of Sioux Falls from paying a gravel supplier under a contract entered into in violation of a statute requiring the city to have awarded the contract to the "lowest responsible bidder").

Plaintiff has cited four cases in which federal courts concluded that disappointed low bidders have a protected property interest in the contract upon which they bid. *See Pataula Elec. Membership Corp. v. Whitworth,* 951 F.2d 1238 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 302, 121 L.Ed.2d 225 (1992); *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.,* 585 F.Supp. 120 (E.D.Ark. 1984), *aff'd on other grounds,* 769 F.2d 517 (8th Cir.1985); *Teleprompter of Erie, Inc. v. City of Erie,* 537 F.Supp. 6 (W.D.Pa.1981); *Three Rivers Cablevision, Inc. v. City of Pittsburgh,* 502 F.Supp. 1118 (W.D.Pa.1980). However, plaintiff's citation of these other cases misses the mark: it is South Dakota state law that determines the character of plaintiff's property interest for purposes of its due process claim. The decisions in *Three*

*Rivers Cablevision, Inc.*[4] and *Teleprompter of Erie, Inc.* relied on Pennsylvania law to determine that the plaintiffs in those cases had protected property interests. The *Pataula Electric Membership Corp.* case rested on an interpretation of Georgia law and the *L & H Sanitation, Inc.* decision rested on an interpretation of Arkansas law.

If South Dakota law were silent on the interpretation of its competitive bidding statute, plaintiff's authorities might be considered persuasive authority for plaintiff's position. However, the fact remains that there *are* South Dakota cases on the issue. As the Court has said, it is bound by the South Dakota law.

The Court concludes that plaintiff had no constitutionally protected property interest in having the renovation contracts awarded to it. Without a property interest there can be no deprivation of due process in violation of either the South Dakota or United States Constitutions.

### 2. Whether Plaintiff Has a Constitutionally Protected Liberty Interest Which Has Been Deprived by Defendant

■ Plaintiff has also alleged that defendant's actions deprived it of a protected liberty interest without due process of law. The concept of "liberty" within the meaning of the due process clause of the United States Constitution

> denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706–07, 33 L.Ed.2d 548 (1972) (quoting *Meyer v. Ne-*

*braska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). The liberty interest allegedly affected by defendant's actions in this case is plaintiff's ability to contract as affected by its good name and reputation.

It is true that persons have a liberty interest in their "good name, reputation, honor or integrity." *Roth* at 573, 92 S.Ct. at 2707. However, such a liberty interest is implicated only when a defendant's action forecloses virtually all other contracting opportunities or the reason for a defendant's termination of plaintiff's contract or refusal to grant plaintiff a contract is such as to suggest that the plaintiff is dishonest, immoral, mentally incompetent, disloyal, or some other reason which would "seriously damage [plaintiff's] standing and associations in his community." *Id.; see also Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 898–99, 81 S.Ct. 1743, 1750–51, 6 L.Ed.2d 1230 (1961) (holding that procedural due process rights were not violated by discharge of an employee for reasons which did not "bestow a badge of disloyalty or infamy" on the employee); *Shands v. City of Kennett,* 993 F.2d 1337, 1347 (8th Cir.1993) (employee's liberty interest not implicated by discharge unless reason for discharge is extremely stigmatizing, such as accusations of dishonesty, immorality, criminality, or racism); *Smith & Wesson v. United States,* 782 F.2d 1074, 1081 (1st Cir.1986) (liberty interest not implicated in refusal to award contract to gun manufacturer because reason for not awarding contract was not based on allegations of manufacturer's fraud or dishonesty); *Old Dominion Dairy Prods., Inc. v. Secretary of Defense,* 631 F.2d 953, 955–56 (D.C.Cir.1980) (liberty interests of government contractor implicated by government's refusal to award contract because government action virtually barred contractor from all further government contracts and because government's reason for refusing to award contract was based on allegations of dishonesty and lack of integrity); *Nathanson v. United States,* 630 F.2d 1260, 1265 n. 3 (8th

---

4. *Three Rivers* is of doubtful authority. Approximately one month before *Three Rivers* was decided in the Western District of Pennsylvania, Judge Luongo in the Eastern District reached a con-

trary conclusion in *J.P. Mascaro & Sons, Inc. v. Township of Bristol,* 497 F.Supp. 625 (E.D.Pa. 1980).

Cir.1980) (liberty interests are implicated in discharge of employee only when the reasons for discharge are stigmatizing, such as drug usage or grave character defects as opposed to poor performance); *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1258 (2d Cir.1975) (no deprivation of liberty interest where governmental action does not foreclose other employment opportunities and does not stigmatize).

A defendant's refusal to grant a contract to a plaintiff for the reason of plaintiff's alleged poor performance does not implicate the plaintiff's liberty interests where the defendant's actions do not foreclose all of plaintiff's contracting opportunities. *Green v. St. Louis Hous. Auth.*, 911 F.2d 65, 69–70 (8th Cir.1990) (dismissal due to poor performance, even if allegation of poor performance is false, does not implicate a liberty interest); *Smith & Wesson*, 782 F.2d at 1081 (denying a weapon-supply contract to plaintiff because plaintiff's weapons did not pass military testing did not implicate plaintiff's liberty interests); *Kyles v. Eastern Neb. Human Servs. Agency*, 632 F.2d 57, 61–62 (8th Cir.1980) (discharge because of poor performance on the job and inability to get along with supervisors and subordinates did not implicate a liberty interest); *Nathanson*, 630 F.2d at 1265 (dismissal for poor performance does not implicate one's liberty interests); *Mazaleski v. Treusdell*, 562 F.2d 701, 709–15 (D.C.Cir.1977) (dismissal for unsatisfactory work does not implicate one's liberty interests).

Plaintiff agrees that the reason defendant refused to grant the renovation contracts to plaintiff was because of the poor performance of CCCI on the City/School Administration Building. This reason is not of the stigmatizing type which would implicate plaintiff's liberty interests. There was a sufficient nexus between CCCI and the plaintiff that defendant was entitled to treat them as the same for the purpose of the bidding procedure. In addition, defendant's action has not foreclosed either plaintiff or CCCI from pursuing other contracting opportunities either in the private or public sector. The Court thus concludes that defendant's refusal to award plaintiff the renovation contracts did not im-

plicate plaintiff's liberty interests. Accordingly, there can be no violation of plaintiff's procedural due process rights.

## CONCLUSION

The Court concludes that plaintiff has not demonstrated that defendant deprived plaintiff of a constitutionally protected property or liberty interest without due process of law. Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment (Docket No. 12) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for partial summary judgment (Docket No. 20) is denied.

IT IS FURTHER ORDERED that plaintiff's motion to strike (Docket No. 30) is denied.