BAK, Appellant v. JONES COUNTY, Respondent

(210 N.W.2d 65)

(File No. 11201. Opinion filed August 28, 1973)

Stephens, Riter, Mayer & Hofer, Pierre, for plaintiff and appellant.

C. D. Kell, Murdo, for defendant and respondent.

BIEGELMEIER, Chief Justice.

This action by a contractor for work done on a county road was tried by the court. The findings of fact and undisputed evidence were that about the first of June 1971, plaintiff had a

talk with Helge Anderson, one of the county commissioners of Jones County, who said some damage had been done to roads by excessive rainfall and asked him if he was "interested in fixing them". Later (on June 28th) the superintendent of highways and the commissioner went out to view a road which required repair and requested plaintiff to do this repair work. Thereafter plaintiff spent about a month (an exhibit shows that with other jobs the period covered from June 30th to August 3rd) working on the road with four large machines; he submitted a $17,925 bill which was rejected by the county. The two other county commissioners were aware plaintiff was doing the work, but no express contract was made between plaintiff and the county, nor were any plans and specifications prepared by the highway superintendent. The county did not advertise for bids and did not comply with SDCL 5-18, which requires contracts to be awarded on competitive bids pursuant to such advertising, or with SDCL 31-12, which governs the construction, maintenance, improvement and repair of county roads.

From these findings the court's conclusions of law were that plaintiff could not recover upon express contract or express leasing of equipment as there was no express contract or lease between the parties, and county commissioners do not have authority to contract in an informal manner but only by resolution entered on the minutes of their meetings; it further concluded that no recovery could be had on a quantum meruit basis as any attempted implied contract between the parties would not be in compliance with SDCL 5-18, the competitive bid statutes, and thus would be illegal, void and contrary to established public policy. The court's last finding of fact was that the washed-out road created an emergency requiring immediate repair. The court concluded no recovery could be had on this basis as the existence of an emergency does not suspend the operation of SDCL 5-18 requiring competitive bids or the procedures required by SDCL 31-12. In accord with these conclusions of law the court entered a judgment denying recovery and dismissing the complaint.

During the time involved SDCL 5-18, a comprehensive act governing the power of public corporations to construct public

improvements, was in effect. The chapter specifically included "counties" and this road work as a "public improvement"; it further stated the terms " 'Construction' and 'constructed' shall, in addition to their ordinary meaning embrace repair and alteration." SDCL 5-18-2 provided in part:

> "All contracts of any public corporation, whether for the construction of public improvements or contracts for the purchase of materials, supplies or equipment, when such contracts involve an expenditure equal to or in excess of fifteen hundred dollars, must be let to the lowest responsible bidder."

Subsequent statutes required the preparation and filing of plans and specifications, the advertisement for bids which must state where these plans may be examined, the time and place where bids would be publicly opened, the acceptance of the lowest responsible bid and, finally, a written contract and performance bond. SDCL 5-18-19 provided in part:

> "It shall be unlawful for any public corporation or its officers to enter into any contract in violation of the terms of this chapter or chapter 5-21, and any such contract entered into shall be null and void and of no force and effect."

These statutes are those referred to and cited under their former SDC and SDC 1960 Supp. code sections in Hauck v. Bull, 1961, 79 S.D. 242, 110 N.W.2d 506. The only change from those statutes is that the then SDC 1960 Supp. 65.0701-2[1] excepted contracts of $1,000 or less from its provisions and the present statute, SDCL 5-18-2, excepts those of $1,500 or less. It is unnecessary to review the many opinions of this court under various situations where the present question or similar problems have arisen, and we will limit our observations to our recent opinions which are decisive.

---

1. Originally Ch. 300, S.L.1939, amended and codified Ch. 65.07 of SDC 1960 Supp.

In Hauck v. Bull, supra, the action was by taxpayers to recover money alleged to have been unlawfully paid out under a void road construction contract. A special statute[2] granted power to the township electors at their annual meetings to direct the institution or defense of actions in all controversies in which the township was interested. The court held that under this statute and the existence of a bona fide difference of opinion as to the validity of the claim, in view of an earlier decision of this court, the electors had the authority in good faith to compromise and direct the settlement of the claim.

█ No such statutes or state of facts exists here. Hauck v. Bull, supra, decided that Ch. 300, S.L. 1939 (presently SDCL 5-18) applied to townships, though they were not specifically named therein, as it did to counties which were specifically named therein (SDCL 5-18-1(1) ). The court in Hauck v. Bull wrote that the legal effect of a contract claimed to exist without compliance with the statutes cited has "been clearly and consistently delineated by this court" in many cases, citing six opinions from Norbeck & Nicholson Co. v. State, 32 S.D. 189, 142 N.W. 847, to Fonder v. City of South Sioux Falls, 76 S.D. 31, 71 N.W.2d 618, as authority for its conclusion that the contracts entered into by the township officials in violation of said act (now SDCL 5-18) "are unlawful and void". Having clearly and consistently so held, we do not depart therefrom and conclude, as SDCL 5-18-19 declares, that the claimed contract is "null and void and of no force and effect."[3]

█ The claim of plaintiff filed with the county auditor was for "Machine Hire", and a statement attached thereto listed the hours and rate per hour of four machines used on the project; as

2. By SDC 58.0303(3), now SDCL 8-3-2(3), reminiscent of the democratic government exercised at early New England town meetings, township electors at their annual meeting were given power "To direct the institution or defense of actions in all controversies wherein such township is interested".

3. Fonder v. City of South Sioux Falls, 76 S.D. 31, 71 N.W.2d 618, denied recovery for purchase of gravel used by the city without compliance with the bidding statutes on the ground that the requirement constituted a jurisdictional prerequisite to the exercise of the power of the city to enter into a contract.

some of the evidence supported this theory it deserves mention. A similar claim was before the court in State ex rel. Small v. Hughes County Commission, 1965, 81 S.D. 238, 133 N.W.2d 228, involving sections of SDC 28 relating to procedures to be taken for road construction and repair, now found in SDCL 31. There, as here, there was no compliance with the statutes. Justice Hanson, speaking for a unanimous court, wrote:

> "The County Commission contends it is empowered to rent road machinery and equipment on an hourly basis and to construct, repair, and maintain the entire county highway system with such rental equipment under the authority of 'day labor' without preliminary plans, specifications, surveys, cost estimates, or advertisement for bids of any kind on any project regardless of estimated cost. We cannot agree.

> \* \* \* \* \* \*

> "The record further shows the County Highway Superintendent has not made, and does not intend to make, any surveys for any planned construction work and he has not prepared, and does not intend to prepare, any plans, specifications, or cost estimates on any highway construction, repair, or maintenance project upon which the rental equipment will be used. According to his testimony he figures out the best way and the contractor performs the work under the superintendent's supervision and to his satisfaction. There is no authority for such a casual and informal method of constructing, repairing, and maintaining our county highway systems. The legislative purpose of requiring plans, specifications, cost estimates, and advertisements for bids on a competitive basis—before day labor may be employed—is to provide for an orderly and systematic development of a county highway system; to provide comparative cost estimates and yardsticks; and to guard against favoritism, improvidence, extravagance, fraud, and corruption. See Fonder v. City of South Sioux Falls, 76 S.D. 31, 71 N.W.2d 618, 53 A.L.R.2d 493. The procedure employed by Hughes County fulfills none of these purposes or ob-

jectives. In the absence of any surveys, plans, specifications, cost estimates, and advertisement for competitive bids on projects exceeding $1,000 for the year 1964 the Writ of Prohibition should have been issued restraining the county from using the rental road equipment in the manner contemplated."

Plaintiff argues that recovery should be allowed for the reason that an emergency existed. While he testified the road was dangerous for passenger travel, he also stated that red flags were stuck on sticks so cars would not drive off the end of culverts, as the road was being used by the public. This does not amount to an emergency, and if temporary grading or repair work was necessary SDCL 31-12-23 provided that authority. It was not followed, perhaps for the reason that the work was not temporary repair but construction of a new road or grade. In connection with the claim of emergency, in each case where a governmental subdivision is allowed to contract or have work done on an emergency basis it is specifically set forth in a statute. SDCL 9-47-3 allows a municipality in the event of an emergency specified in SDCL 9-21-15 as the complete failure of the water supply to contract on a unanimous vote without advertising for bids. No such statute for counties has been called to our attention, except SDCL 31-14-21 which provides limited authority for bridge construction and repair and SDCL 31-14-24 which authorized a county with the approval of the State Highway Commission to repair or rebuild a bridge when an emergency arises.

Plaintiff does not claim he was uninformed on the requirements of the statutes mentioned. He testified he had been in the business of road and other construction for himself for ten years and for other contractors before that; that he had bid on public jobs of this kind and knew of the requirement of an advertisement for bids, the bidding and award; that he knew the county could not spend over $1,500 without the letting of a bid and he spoke to commissioner Anderson and the county highway superintendent about it.

Fonder v. City of South Sioux Falls, cited in State ex rel. Small v. Hughes County Commission, supra, spoke of the reason for competitive public bidding:

> "The object the legislature sought to accomplish through the requirement of competitive bidding in making contracts for public corporations is to guard against favoritism, improvidence, extravagance, fraud and corruption. McQuillan, Municipal Corporations, 3d Ed., § 29.29; 63 C.J.S. Municipal Corporations § 995.

> "In 43 Am.Jur., Public Works and Contracts, § 26, it is written: 'Since they are based upon public economy and are of great importance to the taxpayers, laws requiring competitive bidding as a condition precedent to the letting of public contracts ought not to be frittered away by exceptions, but, on the contrary, should receive a construction always which will fully, fairly, and reasonably effectuate and advance their true intent and purpose, and which will avoid the likelihood of their being circumvented, evaded, or defeated.' "

This logic is brought to its full meaning, for while there is no claim of fraud or wrongdoing here, the evidence shows plaintiff's wife is a niece of the commissioner, Anderson.

■ Nor may recovery be based on quasi contract. See Annotation, 33 A.L.R.3d 1164 at 1172. Illustrative of this view is the lengthy opinion of the Iowa Supreme Court in Horrabin Paving Co. v. City of Creston, 221 Iowa 1237, 262 N.W. 480. The reasoning to support the court's conclusion, which we find persuasive, is:

> "In view of the reasons underlying public policy as applied to contracts of municipal corporations, to which reference has heretofore been made, it would, in our opinion, be contrary to public policy to allow one to thus evade provisions which have been enacted by law for the protection of the public, to foist upon the municipality materials and services that could not be returned, and then, when the evasion has been discovered and the contracts declared invalid, to recover on the theory that the municipality has received a

benefit for which it should pay. * * * If a recovery be allowed under the facts of this case, we see no reason why contractors will not be encouraged to enter into contracts with municipal corporations which they realize are of very doubtful validity."

Here it would have been easy to comply with the applicable statutes. SDCL 5-18-3 requires publication of the notice to submit bids for three successive weeks. If the road was damaged about June 1st, as plaintiff testified, publication could have been on Thursdays of June—the 3rd, 10th and 17th, or, in any event, the 10th, 17th and 24th—and bids accepted and work commenced on June 30th, which is when plaintiff moved his machinery on the job. The work was done without plans and specifications so an acceptable set could have been readily prepared and there would have been no delay. Suffice to say there was no attempt to comply with SDCL 31-12-23, and the court so found. As for emergency, the court concluded:

> "The plaintiff cannot recover on the basis of an existing emergency (for two reasons given in SDCL 5-18 and 31-12) * * *. Further, an emergency does not justify recovery by the plaintiff where he has made no contract with the defendant."

The North Dakota opinion of Merchants Nat. Bank & Trust Co. v. City of Grand Forks, N.D., 130 N.W.2d 212, reflects statutes and rules which give greater leeway to cities as against other public corporations, for cities engage in furnishing water, electricity, heat, etc., which are vital to survival. Hence, our cited SDCL 9-47-3 also permits contracts to repair a water system without bids. Water was also involved in the North Dakota opinion and the regulation permitted a city to make a contract *without* obtaining bids, and it had " 'full and complete authority to enter into and make any contract * * * when competitive bidding is not practical or advantageous to the City * * *.' "

Recovery for repair and graveling of streets in bad condition because of spring rains was not allowed in Tobin v. Sundance, 1933, 45 Wyo. 219, 17 P.2d 666, cited in 64 Am.Jur.2d, Public

Works and Contracts, § 39, p. 891, n. 29, a lengthy opinion, and in Johnson County Sav. Bank v. City of Creston, 212 Iowa 929, 231 N.W. 705, on any of the theories advanced by plaintiff.

Quoting from the United States Supreme Court, the Wyoming opinion stated:

> " 'Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislature; or, in other words, to the will of the law.' "

The trial court reached a correct result in accord with our prior decisions and the judgment is affirmed.

WINANS and WOLLMAN, JJ., concur.

HANSON, J., dissents.

DOYLE, J., absent.

HANSON, Justice (dissenting).

The trial court found that in June 1971 heavy rains caused damage to the Van Metre road in northern Jones County creating an emergency requiring immediate repair of such road. We are bound by such finding. Plaintiff repaired the road at the request of the County Commissioners and under the direction and supervision of the County Highway Superintendent.

Under the circumstances it was impracticable and impossible for the County Commissioners to have plans and specifications prepared and to comply with the competitive bid statutes. The consequent delay could be dangerous and could expose the county to liability.

This Court can take judicial notice of the fact that roads do not run along every section line in western South Dakota. Closing the Van Metre road for any length of time would shut off a large rural area from access to market, schools, and medical care and attention.

The broad general rule governing emergency situations of this nature is stated in 64 Am.Jur.2d, Public Works and Contracts, § 39, page 891, as follows:

"Bearing in mind that requirements of competitive bids and the letting of contracts to low bidders have for their object insuring economy and the exclusion of favoritism and corruption in awarding public contracts and in the furnishing of labor, services, property, and materials for public uses, statutes requiring competitive bidding should not be given such construction as to defeat their purpose or impede usual and regular progress of public business and public improvements, and their requirements may be dispensed with where such advertisement will not result in competitive bidding for the work.

"When contingencies arise and services, material, and property are needed immediately and competitive offers and written contracts would be unserviceable or impossible, the statutes do not apply, because application could not have been intended under these circumstances. Indeed, many provisions requiring competitive bidding for public contracts and the letting of such contracts to low bidders contain express exemptions where an emergency requires speedy action or prompt performance of a contract, or the contract is 'for actual emergency work.' What constitutes an emergency within the meaning of such a statute is not easy to determine; much depends upon the special circumstances in each case, and adjudicated cases are not very helpful. Generally, however, the term 'emergency' in this connection signifies a situation which has suddenly and unexpectedly arisen and which requires speedy action— some unexpected necessity requiring immediate, or at least quick, action. * * *"

This emergency exception was recently recognized by the North Dakota Court in Merchants Nat. Bank & Trust Co. v. City of G. F., N.D., 130 N.W.2d 212, in which the Court concluded:

"Certainly there was not sufficient time to prepare specifications and solicit bids by five days notice published in the official newspaper. This was therefore a case where competitive bidding was not practical. The regulation above quoted contemplates that the city council shall approve the contract after negotiations have been completed. Clearly, the city council had the power to waive competitive bidding and approve the contract for the work ordered or approved by the city manager. The contract was not ultra vires. This is a case where the rule laid down by this court in Northwestern Sheet & Iron Works v. Sioux County, 76 N.D. 451, 36 N.W.2d 605, should be applied. In that case we said:

> 'A public corporation may not escape liability for the reasonable value of goods obtained and retained by it through transactions coming within the general powers of the corporation and the contracting corporate board, which are procedurally defective without paying the reasonable value thereof when equity and good conscience require payment.'"

The claim in State ex rel. Small v. Hughes County, 81 S.D. 238, 133 N.W.2d 228, was not similar or comparable as there was no emergency involved therein.

In my opinion plaintiff is entitled to compensation under the provisions of SDCL 31-12-23:

> "It shall not be necessary for plans and specifications to be prepared for the construction of temporary grading, repair work, or turnpiking operations with blade graders on the county highway system, and the same may be done by day labor or private contract made by the board of county commissioners. Such work shall be supervised by the county highway superintendent who shall certify to all claims for such work."

I would therefore reverse and remand this action with instructions to allow plaintiff the actual and necessary cost of temporary grading and repair performed on the Van Metre road.