**HAMAR CONSTRUCTION CO., a corporation, Plaintiff and Respondent,**

**v.**

**UNION COUNTY, South Dakota, et al., Defendants and Appellants.**

No. 11582.

Supreme Court of South Dakota.

Dec. 16, 1976.

Rehearing Denied Jan. 21, 1977.

John F. Murphy of Donley & Murphy, Elk Point, for plaintiff and respondent.

Carl W. Quist, Asst. Atty. Gen., for defendants and appellants; William J. Janklow, Atty. Gen., on the brief.

WUEST, Circuit Judge.

During the spring floods of 1969, the Hawarden Bridge in Union County was

damaged. Many roads and bridges in the area were also damaged. According to Mr. Bak, who was a county commissioner at the time, the board immediately became aware of the difficulties which would be caused by the damage to the bridge and "approached the state highway department in order to get this classified as an emergency and emergency repair." Mr. Bak testified that the state gave its approval of the project as an emergency project in the early part of September. Shortly thereafter, Mr. Streeter, county commissioner, determined that Hamar Construction Company was available to work on the bridge immediately. Mr. Hamar was contacted and on September 12, 1969, he was called to a meeting at the bridge site. According to Mr. Bak, the participants in the meeting were county commissioners, Mr. Bak, Mr. Streeter, Mr. Quam, and Mr. Gerard, the county highway superintendent.

According to commissioner Streeter, "I was the one that hired" Hamar. Streeter testified that he told Hamar to "move in with what equipment he needed and keep track of the hours and we'd pay him on the hourly base." Hamar was instructed to inform the county on a weekly basis of the cost of his services. All parties agree that no written agreement was ever made. Hamar testified: "There was no reason for to have a set deal because there was no contract. Didn't have to bid on it. It was done by the hour so it's immaterial what had to be done really."

"Q. Did you give the commissioners, the people that were present at this hearing, any indication of what you thought it might cost to do the work?

"A. No I did not.

"Q. Didn't make any estimate?

"A. No sir.

"Q. And I believe you testified that the only figures that were kicked around as far as what the potential cost was going to be was between forty and one hundred thousand?

"A. Yah. Yes."

Hamar began work immediately but did not submit his first bill until a full month had expired. That bill was for $18,572. A few days later, after Hamar had billed another $2,607, he was dismissed by the board. His total bill was $21,179.

The county commissioners claim Hamar was entitled to $3,386.46 and tendered a check for that amount. Mr. Hamar refused it and returned the check. This lawsuit followed. The trial court found Hamar was entitled to the full $21,179. The county has appealed claiming a valid contract was never consummated. We agree.

■ The power of the county boards must be exercised by them as boards and not by individuals, and the county is not bound by any action taken by members of the board individually. SDCL 7–8–16. *Brown County v. Zerr*, 1940, 67 S.D. 516, 295 N.W. 289.

This court held in *Boyd v. Lake County*, 72 S.D. 431, 36 N.W.2d 384, as follows: " 'Whenever any board of county commissioners shall act upon any petition, adopt any resolution, make any appointment to fill any vacancy in a county office, or enter any final order in any proceedings pending before any such board, the members shall vote by yeas and nays and a record of such votes shall be kept by the county auditor who shall include the same in the published report of the minutes containing the record of any such action, resolution, appointment, or order.' SDC 12.0614 [now SDCL 7–8–17]. Under the foregoing statute the board of county commissioners speaks through its record, and the members of the board cannot by unofficial utterances bind the county. *Trippeer v. Couch*, 110 Or. 446, 220 P. 1012. 'The board of county commissioners can act authoritatively only by resolution properly spread upon the minutes and joined in by a majority of the board.' *Kelly v. Hamilton*, 76 Wash. 576, 136 P. 1148, 1151. Members of the board acting individually act without authority. If they could do so 'no record thereof would be made, and no order entered on the record from which an appeal could be

taken.' *Conger v. Board of Com'rs.*, 5 Idaho, 347, 48 P. 1064. The action of the board is not complete or effective to bind the county for any purpose until the record evidencing such action by the board has been made. 'The records of the court [board] are held to be the sole witness of the proceedings  *  *  *.' *Epps v. Washington County*, 173 Tenn. 373, 117 S.W.2d 749, 750." 72 S.D. at 436, 36 N.W.2d at 387.

SDCL 31–14–24 provides for the repair of bridges and approaches in emergency situations and authorizes the county commissioners to enter into a contract for the building or rebuilding of bridges and approaches without advertising for bids. However, the department of transportation must approve the necessity for such emergency before the contract is let by the board of county commissioners. SDCL 31–14–25. These provisions have no application to this case because no contract was ever let.

■ Other statutes permit repairs to bridges by counties by "day labor." SDCL 31–14–20 and 31–14–21. These statutes contemplate construction by the county with "county labor and county-owned equipment." We do not believe these latter statutes authorize the county board unrestrained power to hire contractors by the hour as was done in this case. See *State v. Hughes County Commissioners*, 81 S.D. 238, 133 N.W.2d 228.

■ There is no authority or justification for such a casual and informal method of expending large sums of money to repair the bridge and its approaches. If there were an emergency, a contract could have been let without bids as provided by SDCL 31–14–24 and 31–14–25. Nor can the plaintiff recover under the theory of quantum meruit. *Bak v. Jones County*, 87 S.D. 468, 210 N.W.2d 65.

Reversed.

WINANS, J., concurs.

WOLLMAN, J., concurs specially.

DUNN, C. J., concurs in part and dissents in part.

COLER, J., dissents.

WUEST, Circuit Judge, sitting as a member of the court.

ZASTROW, J., not having been a member of the court at the time this case was orally argued, did not participate.

DUNN, Chief Justice (concurring in part and dissenting in part).

I would concur that the case should be remanded for further trial on issues essential to the decision of the case.

The only issue tried in the trial court was the amount due the contractor. On appeal, the state and county now claim the contract was void. It is impossible to decide this issue without evidence and a finding from the trial court on the issues of:

1. Whether an emergency existed, and
2. Whether the actions of the agent of the State Highway Commission amounted to an approval of this contract, if in fact it was an emergency contract.

SDCL 31–14–24 and 31–14–25 provide the procedures available for emergency contracts for repair or rebuilding of bridges. The procedure is as follows:

SDCL 31–14–24. "Whenever an emergency arises requiring immediate expenditure for the repair or rebuilding of bridges and approaches to bridges, when such bridges and approaches to bridges are required to be built immediately, and on such short time that in the judgment of the board of county commissioners the public would be seriously inconvenienced in awaiting the regular advertising for bids for such building and rebuilding of bridges and approaches, the board of county commissioners may enter into contract for any such building or rebuilding of bridges and approaches to bridges without advertising for the letting of any contract therefor."

SDCL 31–14–25. "Before any contract is let by any board of county commissioners under § 31–14–24, the necessity for such emergency contract must first be ap-

68

proved by the department of transportation and any contract let thereunder must in all respects be first approved by the department."

This court has stated the general proposition that a contractor is not entitled to recover upon an agreement with county officials or for benefits received by a county from work done when the county does not comply with competitive bidding and written contract requirements. *Bak v. Jones County*, 1973, 87 S.D. 468, 210 N.W.2d 65. However, the recent pronouncement in *Bak* distinguishes that case from the situation here. In discussing whether an emergency existed or was even relevant in construction of a new road, the court stated:

"In connection with the claim of emergency, in each case where a governmental subdivision is allowed to contract or have work done on an emergency basis it is specifically set forth in a statute. * * No such statute for counties has been called to our attention, except * * * SDCL 31-14-24 which authorized a county with the approval of the State Highway Commission to repair or rebuild a bridge when an emergency arises." 87 S.D. at 474, 210 N.W.2d at 68.

In this case there was not only a statute authorizing such county action, but there was also a general belief by all parties involved that they were conforming to such statute. The county admits that "[t]he County Commissioners were evidently under the impression an emergency existed and a contract did not have to be let to bids." In addition, there is evidence that the State Highway Commission gave its approval to such emergency action.

In the event that the contractor cannot show compliance under these statutes, the trial court should determine the benefits received under an implied contract. This court ruled in *Seim v. Independent District of Monroe*, 1945, 70 S.D. 315, 17 N.W.2d 342, that a governmental body may be held liable upon an implied contract for benefits received,

"where the [county] is given the general power to contract with reference to a

subject-matter, and the express contract which it has assumed to enter into in pursuance of this general power is rendered invalid for some mere irregularity * * * and where the form or manner of entering into a contract is not violative of any statutory restriction upon the general power of the governing body to contract nor violative of public policy." 70 S.D. at 319, 17 N.W.2d at 344.

Where Hamar acted in good faith, relying on the emergency authority of the county, it would be no violation of public policy to compensate him for the benefit the county received.

WOLLMAN, Justice (concurring specially).

I concur in reversal for the reason that even if the evidence supports the trial court's determination that an emergency existed that justified the letting of the contract under the provisions of SDCL 31-14-24, the trial court made absolutely no finding that the Department of Transportation "in all respects" approved the contract before it was let, as required by SDCL 31-14-25.

COLER, Justice (dissenting).

I do not agree with the language of the majority opinion which places what I believe to be an over-emphasis on certain statutes relating to the duty of county commissioners to reduce their actions to writing. Must all contractors make sure the board has complied with the law before they proceed? I think not.

SDCL 53-8-1 states "[a]ll contracts may be oral except such as are specifically required by statute to be in writing." SDCL 31-14-24 does not mandate a written contract but says that the board of county commissioners may enter into a contract, and the acts of the county commissioners and their representatives certainly lead the respondent in this action to rely upon the representations that the county and state officials made to him that he had a contract.

In respect to nonapproval by the department of transportation, SDCL 31–14–25, I believe there was substantial compliance with the requirements of that statute. The affidavits of various employees of the highway department indicate that they did not enter into a formal written contract but the record discloses that a representative of the then highway department, now department of transportation, was present when the negotiations were made and exigency of the circumstances required an immediate commencement of the work by the contractor. The respondent had been sought out as being the only contractor available by one of the county commissioners, who was concerned with getting that road open to the school bus traffic as he was taking considerable pressure from school district officials.

The state's attorney in the answer raised, as an affirmative defense, not the statute of frauds as is required to be affirmatively pled under RCP Rule 8(c), but did allege or set forth as an affirmative defense accord and satisfaction, which of course cannot be sustained since the check which was tendered by the county in the amount of $3,386.46 was never accepted by respondent who insisted upon payment of his full hourly charges for machine work done.

In my view the issues that have been raised on appeal are essentially waived by the position taken by the county in the first instance. Within the record it appears that there was no quarrel with either the fact of an emergency existing or the fact that a contract existed but only as to what the fair and reasonable value of the services rendered should be found to be. I believe that the findings of the trial court are adequately supported in the record and that the judgment should be affirmed.