NORTHERN HILLS SANITATION, INC., Plaintiff and Appellant,

v.

The BOARD OF COMMISSIONERS OF the CITY OF LEAD, State of South Dakota, and Ronald A. Island, Bolesh Jagodzinski and Daniel E. Callahan, constituting the members of said Board, and Dale R. Erickson, Lead City Auditor, Defendants and Respondents.

No. 12349.

Supreme Court of South Dakota.

Argued Nov. 21, 1978.

Decided Dec. 29, 1978.

William A. Wyman, Rapid City, for plaintiff and appellant.

A. P. Fuller of Kellar, Kellar, Fuller & Amundson, Lead, for defendants and respondents.

DUNN, Justice.

This appeal involves the legality of a contract entered into by the City of Lead (Lead) and Northern Hills Sanitation, Inc. (Northern Hills), for the collection and disposal of solid waste. Northern Hills filed this action for a declaratory judgment, and the trial court entered a judgment declaring the contract void. We affirm.

Northern Hills was incorporated in October of 1974 for the purpose of collecting and disposing of solid waste, garbage and refuse. The incorporator of Northern Hills, Walter Taylor, was an officer and director at all times pertinent to this action while serving at the same time as the chief of police of Lead. Taylor operated his garbage collection service in the Spearfish Canyon area and in some of the outlying areas, as well as providing the Lead commercial garbage service. Also at all time pertinent, Ralph Hoggatt was counsel for Northern Hills while serving in the capacity of Lead city attorney.

In November of 1974, a franchise agreement for garbage collection and disposal was discussed between Lead and Northern Hills. The agreement would have given Northern Hills the exclusive right to use Lead city streets and alleys for the purpose of collection and disposal of refuse for a period of ten years. The proposed franchise was embodied in an ordinance which had its first reading before the Board of Commissioners (Commissioners) of Lead. As a result of adverse citizen reaction to the proposed franchise, the ordinance received no second reading and was tabled by the Commissioners.

In January of 1975, the South Dakota Department of Environmental Protection ordered Lead and its Commissioners to implement a new refuse collection and disposal system by June 1, 1975. Pursuant to this pressure, the Commissioners resolved to enter into an agreement with the cities of Deadwood and Central City for a system of solid waste disposal and to advertise for sealed bids for such a system. Advertisements were subsequently published for bids on six different contracts ranging from total collection and disposal of solid waste from residences in all three cities involved through a transfer site to an approved landfill, to collection and disposal of solid waste to the transfer site only or from the transfer site only, to construction of the transfer site only, and to dumping charges in an approved landfill only.

The bid of Northern Hills for the total project was accepted, and the Commissioners decided to enter into a contract with Northern Hills upon the satisfactory negotiation of an agreement between all three cities. Although the city of Deadwood refused to enter into a three-city agreement, the Commissioners entered into a separate contract with Northern Hills for the collection and disposal of Lead's solid waste on March 27, 1975. At the same time, the Commissioners passed an ordinance which amended the existing garbage collection provisions of the ordinances of Lead in order to facilitate the contract with Northern Hills. Prior to this time, the citizens of Lead were provided with garbage collection service by a private contractor who was paid out of Lead's general tax levy. The proposed amending ordinance provided for a direct monthly assessment on residents of Lead for garbage collection service. On May 7, 1975, the amending ordinance was defeated by the citizens of Lead in a special referendum election. The Commissioners operated under the contract and paid

Northern Hills for garbage collection services out of the general tax levy until September 30, 1976, at which time the Commissioners passed a resolution declaring the contract void. This resolution was a result of an audit by the South Dakota Department of Legislative Audit which suggested that the contract was void.

Northern Hills initiated the present action seeking injunctive relief from the resolution declaring the contract to be void and praying for a declaratory judgment adjudicating the rights and duties of the parties under the contract. In holding the contract void, the trial court concluded that the contract did not conform to the bid specifications, that the contract was made and an expense incurred for a term of years without the statutorily prescribed preexisting appropriation of public funds therefor, and that officers of Lead, namely the chief of police and city attorney, were individuals personally interested in the contract in violation of statutory proscriptions.

■ In our review of the trial court's findings and conclusions on appeal, we will presume such findings and conclusions to be correct, and we will not seek reasons to reverse. *Lytle v. Morgan,* 1978, S.D., 270 N.W.2d 359. We will not set aside the trial court's findings unless they are clearly erroneous. SDCL 15-6-52(a). In applying the clearly erroneous standard of review, the question is not whether we would have made the same findings that the trial court did but whether, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed. *Cunningham v. Yankton Clinic, P.A.,* 1978, S.D., 262 N.W.2d 508.

■ Municipalities have the express power to enter into contracts for the collection and hauling of garbage and other waste material. SDCL 9-32-11. Such contracts, however, are subject to the requirement that all public contracts must be awarded only after a competitive bidding procedure to the lowest responsible bidder. SDCL 5-18-2, 5-18-3. If any public contract is entered into in violation of this requirement, it is null and void. SDCL 5-18-19.

We have expressed the reason for requiring competitive public bidding in *Bak v. Jones County,* 1973, 87 S.D. 468, 210 N.W.2d 65, as follows:

" 'The object the legislature sought to accomplish through the requirement of competitive bidding in making contracts for public corporations is to guard against favoritism, improvidence, extravagance, fraud and corruption. McQuillin, Municipal Corporations, 3d Ed., § 29.29; 63 C.J.S. Municipal Corporations § 995.

" 'In 43 Am.Jur., Public Works and Contracts, § 26, it is written: "Since they are based upon public economy and are of great importance to the taxpayers, laws requiring competitive bidding as a condition precedent to the letting of public contracts ought not to be frittered away by exceptions, but, on the contrary, should receive a construction always which will fully, fairly, and reasonably effectuate and advance their true intent and purpose, and which will avoid the likelihood of their being circumvented, evaded, or defeated." ' " 87 S.D. at 475, 210 N.W.2d at 68-69, quoting *Fonder v. City of Sioux Falls,* 1955, 76 S.D. 31, 71 N.W.2d 618.

■ With regard to the trial court's conclusion that the contract did not conform to the bid specifications, we look to the first of the six alternative bid options which was the bid accepted by the Commissioners:

"1. *Total Project Bid.* A per-unit bid for the monthly charge for collection and complete disposal of the solid waste from the residences (not otherwise hauled commercially) of Lead, Deadwood, and Central City combined. This means one contract for collecting solid waste in all three municipalities and doing everything necessary to dispose of the solid waste at a State-approved landfill site."

The specifications further called for the period of time, in years, that the bid price covered, together with renewal options. The specifications also stated that the successful bidder would not be responsible for collecting any sums for hauling or disposing of solid waste and that the respective mu-

nicipalities were responsible for the collection of fees from resident owners. Northern Hills was the sole bidder on this first alternative bid option and bid a price of $3.47 for a contract duration period of one year with annual renewal options for nine years. Northern Hills conditioned its bid proposal on an annual renegotiation of the contract price to cover increases in the costs of living and petroleum products.

The contract dated March 27, 1975, which was entered into with Northern Hills, provides for the collection and disposal of solid waste only from residences in Lead. The notice called for a bid for "one contract for collecting solid waste in all three municipalities." This clearly does not conform to the advertisement for bids, particularly the section quoted above upon which the contract was purportedly awarded. The contract also provides for a *unilateral* annual renewal option for nine years by Northern Hills and an escalator clause of a $2 per unit per month increase for incremental increases in the costs of living and of fuel. These are arguably beyond the scope of the advertisement for the specifications of bids. We agree with the trial court's determination that the contract did not conform to the bid specifications.

Regarding the trial court's conclusion that the contract was made and an expense incurred for a term of years without the proper appropriation of funds therefor, we are guided by SDCL 9–21–10 which states that no public contract shall be entered into by a municipality and no expense shall be incurred on such contract "unless an appropriation shall have been previously made concerning such expense, or the governing body authorized to issue bonds for a specific purpose."[1] There was no authority for the issuance of bonds to cover this contract so we are faced with the question of a previously existing appropriation which covers the contract obligations. The contract was executed in March of 1975, and the record reflects the fact that Lead had appropriated public funds for waste collection and disposal for fiscal 1975 which corresponds to calendar 1975. The initial term of the contract with Northern Hills, however, was from April 1, 1975, to March 31, 1976. The Commissioners are only authorized to appropriate funds for one fiscal year (SDCL 9–21–2), and the contract obligated public funds beyond fiscal 1975 which ended on December 31, 1975. The conclusion is inescapable that such an extension of obligation of public funds by contract is unauthorized and is in violation of SDCL 9–21–10. This is particularly true because the unilateral contract renewal option effectively binds Lead for a period of ten years.[2] The record supports the conclusion of the trial court that Lead entered into a contract without the authority of a previously-made appropriation in violation of SDCL 9–21–10.

We hold that the conclusions of the trial court regarding nonconformity of the contract with the bid specifications and violation of the statute requiring a previously existing appropriation of funds support the judgment declaring the contract between Lead and Northern Hills dated March 27, 1975, for the collection and disposal of solid waste to be void. On the basis of our holding, it is unnecessary to reach the trial court's third conclusion that the chief of police and city attorney were individuals personally interested in the contract in violation of SDCL 6–1–1 which further renders the contract void.

The judgment of the trial court is affirmed.

All the Justices concur.

---

1. The only contracts excepted from SDCL 9–21–10 are public contracts for water, gas and electricity which are covered by SDCL 9–21–11.

2. Northern Hills contends that a ten-year contract for the collection and disposal of solid waste is provided in SDCL 34A–6–24. This statute applies only to franchises for the purpose of collection and disposal of solid waste which is inapplicable to the situation before us. The Commissioners considered a franchise ordinance but tabled it in late 1974 as discussed above.