**RAPID CITY AREA SCHOOL DISTRICT NO. 51-4, Plaintiff and Appellee,**

v.

**BLACK HILLS AND WESTERN TOURS, INC., Individually and as Representative of the Class of Taxpayers of the Rapid City Area School District No. 51-4, Defendant and Appellee,**

and

**Stagecoach West Leasing, Inc., Defendant and Appellant.**

No. 13103.

Supreme Court of South Dakota.

Argued Nov. 19, 1980.

Decided April 1, 1981.

J. Crisman Palmer of Gunderson & Palmer, Rapid City, for plaintiff and appellee.

Joseph M. Butler of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellee.

James W. Olson of Wilson, Bottum, Olson, Goodsell & Nash, Rapid City, for defendant and appellant.

HENDERSON, Justice.

## ACTION

Appellant (Stagecoach West Leasing, Inc.) appeals from the trial court's ruling in a declaratory judgment action in favor of appellees (Black Hills & Western Tours, Inc. and Rapid City Area School District No. 51-4). The trial court declared that appellee school district's retention of a bid security made by appellant is proper, and that appellee school district's intent to return the bid security to appellant is not within appellee school district's discretion. Hence, the trial court ruled that the bid security deposited by appellant is the property of, and is to be retained by, appellee school district. We affirm.

## FACTS

After advertising, appellee school district opened bids for student transportation on February 7, 1979. Appellant and appellee Black Hills had each submitted bids on certain routes to provide bus service for appellee school district. The invitation for bids required a bid security of ten percent of the total amount of the submitted bid. It also required that the successful bidder secure a performance bond for one-hundred percent of the amount of the contract.[1]

Accompanying appellant's bid was a cashier's check for $9,376.50 (representing ten percent of appellant's bid for one year of the three-year contract). Appellant's total contract bid for the three years was $281,-295.00. Apparently, appellant originally believed that the bid documents required ten percent of $93,765.00 as bid security. On February 16, 1979, appellant submitted an additional check to appellee school district for $18,753.00 which, when combined with the first check of $9,376.50, totalled $28,-129.50, representing ten percent of the total amount for the three-year contract bid. At a meeting on February 27, 1979, appellee school district waived the formality of requiring a ten percent bid security at the time the bids were opened on February 7, 1979.

On March 13, 1979, appellee school district approved the contract (as per appellant's bid) and authorized the president of the school board to sign it. Appellant was notified by mail on March 15, 1979, of this approval. This notice stated that appellee school district would sign the contract if appellant posted the performance bond by May 1, 1979. On May 1, 1979, an agent of appellant requested a thirty-day extension for filing the performance bond. The performance bond deadline was then extended to June 1, 1979. On June 1, 1979, an agent of appellant requested a meeting with appellee school district for the purpose of trying to modify the performance bond requirements. This meeting was held on June 11, 1979, and appellant's request was removed from consideration pending appellee school district's consultation with counsel. On June 19, 1979, appellee school district rejected all bids, including appellant's, which had been opened on February 7, 1979. Appellant was unable to contract because it could not post the required performance bond. Appellee school district subsequently readvertised for bids. Appellant did not rebid.

---

1. SECURITY AND GUARANTEE—A certified or cashier's check equal to an amount of not less than 10% (ten percent) of the largest possible total for the bid submitted must be attached to your bid as bid security. All bids over $2,500 that fail to comply with the security required will be rejected. In lieu of a certified or cashier's check, a bidder may submit a bid bond in the amount of 10% of the total amount of the proposal. The successful bidder will be required to secure a Performance Bond for 100% of the amount awarded him and file said bond with the Business Office of the School District. The minimum amount of bid security required of any bidder shall be a certified or cashier's check or bid bond equal to an amount of at least $1,000.00. The 100% Performance Bond shall be equal to an amount of at least $10,000.00 for any successful bidder. The Performance Bond will guarantee satisfactory completion (as determined by the School District) of the contract(s).

On June 20, 1979, appellee Black Hills filed a declaratory judgment action seeking to restrain the return of the bid security. This action was dismissed, however, when appellee school district filed its complaint of July 13, 1979, praying for a declaratory judgment regarding the respective rights and duties of the parties, plus the proper administration and disposition of the bid security posted by appellant. The main question addressed by the trial court was whether appellee school district had the discretion to return appellant's bid security. On February 28, 1980, the trial court declared that appellee school district's retention of appellant's bid security was proper and appellee school district had no legal discretion to return the bid security.

### ISSUE

Concerning a bid for student transportation, did the trial court err in ruling that appellee school district's retention of appellant's bid security was proper and that appellee school district has no legal discretion to return the bid security to appellant? We hold that it did not.

### DECISION

■ With respect to declaratory orders, judgments, and decrees, appellant bears the burden of showing that the trial court's findings are clearly erroneous. SDCL 21–24–13; SDCL 15–6–52(a).

Initially, appellant contends that SDCL ch. 5–18 (statutes regarding competitive bids on public contracts) is not applicable to student transportation. This contention is based upon SDCL 13–20–3, which states:

Except for purchases made pursuant to chapter 13–34, [dealing with the purchase of textbooks] whenever any school facilities are to be built or remodeled, or improvements are to be made to school sites, or when supplies or equipment are to be purchased contracts shall be let in accordance with chapter 5–18 and in accordance with plans and specifications that shall be furnished by the school board.

Appellant maintains that the language of SDCL 13–20–3, "supplies or equipment . . . to be purchased," does not encompass contracts entered into by school districts for student transportation. Thus, appellant argues that since the competitive bid provisions of SDCL ch. 5–18 do not apply, the trial court's ruling based upon SDCL ch. 5–18 is erroneous. We do not agree.

■ In *Northern Hills Sanitation v. Board of Com'rs*, 272 N.W.2d 835 (S.D.1978), we held that a contract entered into by a municipality for the collection of garbage is subject to the competitive bidding requirements of SDCL ch. 5–18. The language used in SDCL 5–18–3 is "for the purchase of materials, supplies or equipment. . . ." This language is substantially similar to the language contained in SDCL 13–20–3. Although garbage and students are hardly analogous, we believe that our reasoning in *Northern Hills* is applicable here. The purpose of competitive bidding is as applicable to contracts which provide bus service for students as it is to contracts for the purchase of school supplies. As this Court stated in *Bak v. Jones County*, 87 S.D. 468, 475, 210 N.W.2d 65, 69 (1973):

"... 'Since they are based upon public economy and are of great importance to the taxpayers, laws requiring competitive bidding as a condition precedent to the letting of public contracts ought not be frittered away by exceptions, but, on the contrary, should receive a construction always which will fully, fairly, and reasonably effectuate and advance their true intent and purpose, and which will avoid the likelihood of their being circumvented, evaded, or defeated.' "

We hold that the competitive bid provisions of SDCL ch. 5–18 include contracts entered into by school districts for the transportation of students.

■ Appellant secondly contends that even if SDCL ch. 5–18 is applicable, it is still entitled to a refund of its bid security due to its noncompliance with SDCL 5–18–6, which provides that "each bid must contain a certified check, a cashier's check or draft, for five percent of the amount of the bid[.]" By only submitting $9,376.50 as se-

curity with its initial bid of $281,295.00, appellant argues that it did not comply with SDCL 5–18–6; hence, its bid was unacceptable and void. On February 16, 1979, however, appellant complied with SDCL 5–18–6 by submitting an additional $18,753.00. Due to this compliance with SDCL 5–18–6, the trial court ruled that appellant was estopped from contending that appellee school district's acceptance of its bid was illegal. "The doctrine of equitable estoppel or estoppel in pais is bottomed on principles of morality and fair dealing and is intended to subserve the ends of justice.... In considering the application of the doctrine of estoppel each case, in the nature of things, must stand on its own facts." *City of Rapid City v. Hoogterp*, 85 S.D. 176, 179, 179 N.W.2d 15, 16 (1970) (citation omitted). In light of appellee school district's reliance upon appellant's bid security, as evidenced by an award of the contract to appellant, and appellant's action in complying with SDCL 5–18–6, we hold that the trial court was not clearly erroneous in finding that appellant was estopped from receiving a refund of its bid security.

▬ Appellant, relying upon *Schull Construction Co. v. Board of Regents of Ed.*, 79 S.D. 487, 113 N.W.2d 663 (1962), contends that a public entity may refund a bid security prior to entering into a contract, absent a showing of arbitrary action or fraudulent intent. Here, appellee school district had awarded the contract to appellant on March 13, 1979. At this time, appellant had posted a ten percent bid security on the total amount of the bid. Appellant was unable to post a performance bond, however, even after a thirty-day extension. The bid specification pertinent to this issue states:

> *BID SECURITY*: A certified check, cashier's check, or bidder's bond representing at least 10% (or $1,000.00 which ever is greater) of the maximum proposal is attached. This security is to be left on deposit with the School District. *If the undersigned defaults in executing the agreement or in furnishing a satisfactory Performance Bond, the check will become*

> *the property of the School District,* or the Surety will pay the owner in the amount of the Bond.
>
> It is understood that the bid security may be retained until contracts have been signed or the elapse of the time specified in the instructions to bidders. (Emphasis supplied.)

In light of this bid specification, the legal persuasiveness of *Schull* is nil. To make a forfeiture of bid security discretionary when a bidder is unable to contract, in effect, makes the requirement of bid bonds discretionary. The concept of discretionary bid security is contrary to statutory mandate for school districts in South Dakota and the bid specification by which both parties were bound. We hold that the trial court was not clearly erroneous in ruling that appellee school district is required to retain appellant's bid security.

Appellant has raised other contentions on appeal that were not submitted or ruled upon by the trial court. Accordingly, these issues are not properly subject to review. *Estate of Assmus*, 254 N.W.2d 159 (S.D. 1977); *Chipperfield v. Woessner*, 84 S.D. 13, 166 N.W.2d 727 (1969); *Bottum v. Herr*, 83 S.D. 542, 162 N.W.2d 880 (1968).

The judgment of the trial court is affirmed.

MORGAN and FOSHEIM, JJ., concur.

WOLLMAN, C. J., and DUNN, J., dissent.

DUNN, Justice (dissenting).

I dissent.

The school district is required to follow the law as well as the bidders. It asked for bids on a contract for three years, which is beyond its authority. While this issue was not raised in the trial court and thus not considered on appeal, it still remains important on other issues. Stagecoach had trouble obtaining a bond for this illegal contract for over one year; otherwise it would have complied with the bid and there would have been no lawsuit.

Further, the school district did not declare a forfeiture of Stagecoach's bond as

required. Apparently, with the knowledge that it was requiring a bond for an illegal contract, it simply rejected all bids and re-advertised. Again, it did not follow the statute or the specifications.

When it rejected *all* bids, the security furnished should have been returned to *all* bidders. I would reverse and remand for the trial court to enter an order returning the security to Stagecoach.

I am authorized to state that WOLL-MAN, Chief Justice, joins in this dissent.