**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Hugo A. AUEN, Defendant and Appellant.**

**No. 14191.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 1983.

Decided Jan. 11, 1984.

Mikal Hanson, Asst. Atty. Gen., Pierre, Richard Coit, Legal Intern, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Michael A. Jackley and Bryce Flint, Sturgis, for defendant and appellant.

FOSHEIM, Chief Justice.

Hugo A. Auen appeals a conviction of speeding in violation of SDCL 32–25–8. We affirm.

Mr. Auen was issued a uniform traffic ticket by a Sturgis city policeman for allegedly traveling 67 m.p.h. in a 55 m.p.h. speed zone. He pled not guilty and requested a jury trial. The law-trained magistrate stated he intended to impose no jail sentence and denied the request. Mr. Auen was tried without a jury, found guilty, and fined $50. Costs of $2.50 were added. The decision of the magistrate was affirmed on appeal to the circuit court.

Mr. Auen appeals, urging that he was wrongfully denied the jury trial guaranteed in all criminal prosecutions by Article VI, Section 7 of the South Dakota Constitution. He correctly indicates that a proceeding against a speeder is a criminal prosecution for which a direct penalty of incarceration is authorized.* On the strength of this statutory classification, Mr. Auen contends the criminal nature of the offense and the potential penalty entitle him to a jury trial notwithstanding the no-jail assurance of the magistrate at arraignment.

The Supreme Court of the United States decided long ago that the constitutional jury trial guarantee "in all criminal prosecutions" extends only to the prosecution of serious crimes. *See Callan v. Wilson,* 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888); *District of Columbia v. Colts,* 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930); *District of Columbia v. Clawans,* 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937). More recently, a plurality of the Court in *Baldwin v. New York,* 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), held that a crime can be viewed as petty and not requiring a jury trial where the accused cannot possibly face more than a six month imprisonment. In *State v. Wikle,* 291 N.W.2d 792 (S.D.1980), we chose to align ourselves with the concurring opinion of Justices Black and Douglas in *Baldwin.* We stated, in dictum, at 794: "in any criminal prosecution, whether for violation of state law or city ordinance, in which a direct penalty of incarceration for any period of time could be imposed, the accused is entitled to trial by jury upon demand." Our *Wikle* statement ostensibly includes speeding and similar traffic misdemeanors within the scope of the right to jury trial, since they are crimes and carry a possible jail sentence.

In view of the limited degree of social opprobrium associated with such of-

---

* Speeding has been classified by the legislature as a class 2 misdemeanor, SDCL 32–25–20, and is therefore a crime, SDCL 22–1–4. A violation of the speeding statute, SDCL 32–25–8, carries a maximum penalty of thirty days imprisonment in a county jail or one hundred dollars fine, or both. SDCL 22–6–2(2).

fenses and the impractical court burden of jury trials for these cases, we feel compelled to review our alliance in *Wikle* with the concurring opinion to *Baldwin.* We hold that a court may deny a jury trial request in a criminal prosecution when the court assures the defendant at the time of request that no jail sentence will be imposed. This is, of course, limited to prosecution of offenses with maximum authorized jail sentences of less than six months. We are in accord with the comment of the plurality in *Baldwin* that any disadvantages of limited access to jury trials for petty crimes, onerous as they may be, are outweighed by the benefits that result from speedy and inexpensive nonjury adjudications. Our decision in *Wikle* is modified to the extent it is inconsistent with this opinion.

Affirmed.

DUNN and MORGAN, JJ., concur.

WOLLMAN and HENDERSON, JJ., dissent.

WOLLMAN, Justice (dissenting).

I would adhere to our decision in *State v. Wikle*, 291 N.W.2d 792 (S.D.1980), and would hold that the magistrate erred in denying defendant's request for a jury trial.

As has been pointed out, *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970), does not hold that offenses which carry a maximum punishment of six months or less are automatically petty offenses. *See United States v. Stewart*, 568 F.2d 501 (6th Cir.1978); *United States v. Sanchez-Meza*, 547 F.2d 461 (9th Cir.1976). As the Court was careful to say:

> In this case, we decide only that a potential sentence in excess of six months' imprisonment is sufficiently severe by itself to take the offense out of the category of "petty." None of our decisions involving this issue have ever held such an offense "petty."

*Baldwin*, 399 U.S. at 69, 90 S.Ct. at 1888, 26 L.Ed.2d at 440, n. 6.

Although I do not for a moment believe that our magistrates and circuit court judges have attempted, in this case or in any other like case, to cudgel our citizens into surrendering their constitutional rights, I believe that it is for the legislature to make the initial decision, subject to ultimate judicial review, whether the social opprobrium attached to a conviction of a Class 2 misdemeanor has been so attenuated by changing public attitudes that a jail sentence, and perforce the commensurate safeguard of a jury trial, is no longer warranted. Even if we could agree that because jail sentences are in practice no longer imposed for speeding violations the social opprobrium attached to a conviction of speeding is so minuscule as to render the offense petty, would we, or could we, say the same regarding convictions for second degree petty theft (SDCL 22–30A–17), indecent exposure (SDCL 22–24–1), or gambling (SDCL 22–25–1)? These too are Class 2 misdemeanors, but it is doubtful whether they are petty offenses within the meaning of *Wikle*.

Moreover, even if the majority opinion were limited to speeding cases, leaving for another day the determination regarding other Class 2 misdemeanors, I would be loath to make a defendant's right to a jury trial dependent upon the ad hoc determination of a magistrate or judge. As the Supreme Court of Louisiana has held,

> [A] defendant may not be deprived of his right to a jury trial through the expedient of a trial judge's guarantee of a sentence of six months or less in the event of conviction. State v. Grimble, 397 So.2d 1254 (La.1981). The legislative determination of a case's seriousness entitles an accused to a jury trial, not the possibly arbitrary decision of a trial court.

*State v. Jones*, 396 So.2d 1272, 1274 (La. 1981). Likewise, the Court of Appeals for the Ninth Circuit has stated: "The Supreme Court has repeatedly asserted that the right to a jury trial should depend not upon the predelictions of the particular judge, but upon application of objective standards reflected in the law and practices

of the community ...." *United States v. Hamdan,* 552 F.2d 276, 279 (9th Cir.1977).

In sum, then, rather than to make a blanket pronouncement that all Class 2 misdemeanors are petty offenses or to engage in a case by case analysis of what constitutes a petty offense, I would leave it to the legislature to determine whether certain Class 2 misdemeanors are no longer deserving of carrying a penalty of a possible jail sentence. Once that legislative determination has been made, then pursuant to *Wikle* no jury trial need be afforded.

HENDERSON, Justice (dissenting).

I dissent.

The State Legislature has the power to set maximum sentences for crime. The trial courts of this state must use discretion to impose sentences within maximums and minimums allowed by the legislature. By changing the maximum sentence as set by the legislature, the law-trained magistrate attempted to skirt the constitutional right of a trial by jury. The legislature prescribed a maximum sentence for this offense which included incarceration. A trial court judge affirmed the law-trained magistrate's decision. Constitutionally, and by enactments of the State Legislature, they were both wrong. I ground my dissent on a quote from the United States Supreme Court found in *Bak v. Jones County,* 87 S.D. 468, 477, 210 N.W.2d 65, 70 (1973), written by the first Chief Justice of this Court, the Honorable Frank Biegelmeier: " 'Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the legislature; or, in other words, to the will of the law.' " (Quoting *Osborn v. Bank of United States,* 22 U.S. (9 Wheat.) 738, 866, 6 L.Ed. 204, 234 (1824)). This Court, or the trial court, must give effect to the will of the legislature—to the will of the law. A judicial system cannot survive where judicial power is exercised for the purpose of giving effect to the will of a judge.

Violation of SDCL 32–25–8 (state speeding statute) is a Class 2 misdemeanor as

provided expressly by SDCL 32–25–20. Punishment for a Class 2 misdemeanor is thirty days imprisonment in a county jail or $100 fine, or both. *See* SDCL 22–6–2. The South Dakota Unified Judicial System data reflects some "jail time" sentencing on speeding convictions.

A crime in South Dakota is defined under SDCL 22–1–3 and includes an offense punishable, upon conviction, by

(1) Imprisonment[.]

The South Dakota Constitution art. VI, § 7, provides:

In all criminal prosecutions the accused shall have the right to defend in person and by counsel; to demand the nature and cause of the accusation against him; to have a copy thereof; to meet the witnesses against him face to face; to have compulsory process served for obtaining witnesses in his behalf, and to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

Unilaterally, the law-trained magistrate reclassified a Class 2 misdemeanor as a petty offense. He tried to bend the law for the sake of convenience. He exercised his judicial power to give effect to his will, not the will of the law.

The legislature may come forth and change the law if it wishes but it cannot be done at magistrate court or trial court level.

Appellant, faced with a "limited degree of social opprobrium [disgrace]" or not, was entitled to a jury trial under the law. A law-trained magistrate forced this citizen into a court trial, a far cry from a "trial by an impartial jury of the county." Social disgrace has nothing to do with his rights under the state constitution. I would reverse the decision below. I would not wink at *Wikle* but would stand by its precedent. When you can take the liberty of a man away from him, and put him behind bars by state statute, he should get a jury trial.

This "I will not put you in jail so, Mr. Citizen, you can plead guilty to speeding

and pay your fine" approach is an attempt to hammer and subjugate the citizens of this state into submission of their true statutory and constitutional rights. The fines (economic producing to feed government [1]) in this state have wreaked havoc with the ordinary citizen who struggles, on a daily basis, to feed his family, heat his home, and pay his taxes. Each circuit of this state has a Presiding Judge. These Presiding Judges are appointed by the Chief Justice of this state. These Presiding Judges establish and have established a schedule of fines for traffic offenses for the sake of uniformity across the state. Within the Presiding Judges' Association, a fine and bond schedule committee submits recommendations to the Presiding Judges. It is in this fashion that fines for speeding are established in this state. As of this writing, examples are: 1–5 m.p.h. over speed limit, fine assessed $8, law enforcement officers training fund $12, total $20; 11–15 m.p.h. over speed limit, fine assessed $43, law enforcement officers training fund $12, total $55; 16–20 m.p.h. over speed limit, fine assessed $73, law enforcement officers training fund $12, total $85. In other words, a working man, if he has a job, could very well lose an entire week's net pay for driving 16 miles per hour over the speed limit in South Dakota.[2] The Bureau of Economic Analysis, United States Department of Commerce, for the year 1982 reflects a per capita personal income of $9,666; this is rock bottom for all of the plains states, including Iowa, Kansas, Minnesota, Missouri, Nebraska, North Dakota, and South Dakota. As an example, South Dakota ranked eighth in percentage of families below the poverty level according to the United States Department of Commerce, Bureau of the Census, summary tape file 3C, 1980 Census. My point is that we are a state with many financially distressed people (45th in total population, with 690,768 people, per United States Department of Commerce, Bureau of the Census) and the fine schedule is outrageous considering the proportionate number of people who struggle for survival in this state.[3] Therefore, with the smallest paychecks in the Nation, the request for and attendant results of a jury trial could very well mean meat, potatoes, and bread and butter on the table for a man's family for one week.[4] This decision takes away his statutory and constitutional safety valve from economic oppression and judicial arbitrariness. And it was a judicially domineering act when the law-trained magistrate forced this citizen into a one-man trial

1. I take judicial notice of the testimony in the record of two South Dakota Highway Patrol Officers in *Deuter v. South Dakota Highway Patrol*, 330 N.W.2d 533 (S.D.1983), in which these officers testified under oath that they were imposed a monthly quota of time spent issuing traffic tickets for speeding.

2. *In Application of Northwestern Bell Tel. Co.*, 326 N.W.2d 100,106 (S.D.1982) (Henderson, J., concurring in part, dissenting in part), opposing the award of interim rates for want of any statutory authority, I cited in a footnote the extremely low income of the South Dakota people:

   Per Bureau of Labor Statistics, U.S. Department of Labor, South Dakota ranked 50th in 1975, 1976, 1977, and 1978 in average weekly wage; South Dakota's rank was not given therein for the years 1979, 1980, and 1981; per capita income in 1981 for South Dakota was $8,793 per U.S. Department of Commerce Bureau of Economic Analysis; per October 8, 1982, U.S. Department of Commerce, Bureau of the Census, four counties in South Dakota were ranked in the lowest fifteen counties in the United States of America in per capita income.
   (Caveat: Per December 1983 statistics from the United States Department of Labor, South Dakota ranked 50th in 1982 for average annual pay at $12,702.)

3. Statistics compiled by the Unified Judicial System of this State reveal total fines for speeding for fiscal year 1981, $1,835,721; for fiscal year 1982, $2,539,059; and for fiscal year 1983, $2,205,296. Speeding tickets are big business in South Dakota: Over 6½ million dollars collected in 3 years.

4. Not all of my fellow South Dakotans capitulated to a guilty plea on a speeding charge. Records reveal that there were 489 speeding violation trials to the Court in 1981; 770 in 1982; and 495 in 1983. Additionally, there were 4 jury trials for speeding violations in 1981; 5 jury trials in 1982; and 6 jury trials in 1983. Source: Unified Judicial System, State of South Dakota.

and thereupon promptly found him guilty. Driving licenses are jeopardized in South Dakota by a point system for traffic offenses and traffic offenses trigger higher insurance rates.

This Court does not have to adhere to the plurality of *Baldwin.* We have the right to consider our own citizens and the document their forefathers adopted in this state. We not only have the right but the duty to afford a greater protection to South Dakota's citizens than that afforded by a plurality of the *Baldwin* Court. Indeed, we held in *State v. Opperman,* 247 N.W.2d 673, 674 (S.D.1976):

> There can be no doubt that this court has the power to provide an individual with greater protection under the state constitution than does the United States Supreme Court under the federal constitution. *Oregon v. Hass,* 1975, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570. This court is the final authority on interpretation and enforcement of the South Dakota Constitution. We have always assumed the independent nature of our state constitution regardless of any similarity between the language of that document and the federal constitution. (Footnotes omitted.)

Concerned with the rights of the driving public, I wrote in *State v. Anderson,* 331 N.W.2d 568, 573 (S.D.1983) (Henderson, J., concurring in result):

> Erosions of liberty do not come in giant leaps, they come in miniscule encroachments often hidden to the trained and educated mind. Like a thief in the night, language can steal a liberty deeply ingrained in the fabric of the American way of life. I am afraid of each little encroachment on the liberty of my fellow Americans on the highway.

Approaching South Dakota from Iowa on Interstate 29, the traveler views a huge billboard proclaiming "South Dakota, Come Feel Free Again." I share not that sign's ardour for nonresidents and citizens of this state who travel down those ribbons of gray.

A great compelling motivation for the formation of the American Union was a hunger by our forefathers for justice by their peers. This hunger begot, within the Bill of Rights, the right to a speedy public trial by an impartial jury.[5] In keeping with the spirit of this most precious right, the one which is the bedrock of our American system of jurisprudence, I dissented in *Miller v. State,* 338 N.W.2d 673, 678 (S.D. 1983), where a conviction was affirmed notwithstanding the jury not being advised of defendant's mental illness plea and defense of mental illness (Vietnam War veteran who left the State Penitentiary farm, hallucinating in fear, and hid in the Cathedral Church at Sioux Falls, South Dakota—jury never informed of Vietnam stress syndrome recognized by the American Psychiatric Association and the United States Veterans Administration); I dissented in *State v. Holmes,* 338 N.W.2d 104, 105 (S.D. 1983), wherein the trial court refused a requested instruction on the presumption of innocence (majority affirmed conviction); I dissented in *State v. Finney,* 337 N.W.2d 167, 172 (S.D.1983), wherein the defendant's race was blatantly injected into jury deliberations (majority affirmed the conviction); I dissented in *State v. Iron Shell,* 336 N.W.2d 372, 375 (S.D.1983), where a defendant was prejudicially joined as a codefendant in a murder trial and could not ask questions, before the jury, of his codefendant (defendant and codefendant were the only persons continuously present for 18 hours before victim was killed creating antagonistic defenses which could not be properly raised before the jury—majority affirmed conviction); I dissented in *State v. Smith,* 325 N.W.2d 304, 308 (S.D.1982), as

---

**5.** Article 6 of the Bill of Rights provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel for his defense.

conduct of the prosecutor violated a fundamental requirement of fairness in a jury trial by revealing, only 15 minutes prior to trial, that informant would be called to testify (majority affirmed conviction); and I dissented in *State v. McComsey*, 323 N.W.2d 889,893 (S.D.1982), where a jury separated for 9 hours, mingled with the public, and did not remain under the supervision of court officers (majority approved of such juror conduct).

Collectively, these cases paint a far more graphic picture than my pen. If errant in law, it was within the spirit of the revolutionaries, also dissenters, who founded this Republic.